THE CITY OF ST. LOUIS, Appellant, v. BERTHA C. TURNER ET AL.—
55 S. W. (2d) 942.

Division One, December 20, 1932.

*Julius T. Muench, G. Wm. Senn* and *Seward McKittrick* for appellant.

*Anthony Hochdoerfer* for respondent.

838

RAGLAND, J.—This is a proceeding in condemnation. It was instituted by appellant on September 8, 1919, pursuant to Ordinance No. 30,259, which provided for the widening of Twelfth Street from

Spruce Street to Market Street. Such widening called for the appropriation of forty feet off the ends of the lots fronting west on Twelfth Street as theretofore established. The street has long since been widened, opened and established in conformity with the ordinance; this proceeding has to do merely with the assessments of damages and benefits with respect to two pieces of property.

One of the properties affected by the condemnation had a frontage of twenty-one feet and six inches on Twelfth Street; the other a frontage of twenty-eight feet and six inches; both were 152 feet and six inches in length, and together comprised the ground platted as lots 24 and 25 of Henry Chouteau's Estate, a subdivision, city Block 206-S. On the first there was an old two-story brick residence which was occupied as such; on the second there was a two-story brick building, originally constructed for a dwelling, which was occupied on the second floor by tenants; the lower story having been converted into two storerooms was occupied, one room as an electric shop and the other as the office and courtroom of a justice of the peace. The cutting of forty feet off the lots destroyed both buildings. The twenty-one foot six inch lot was referred to in the hearings below as the "Lancaster property," and the twenty-eight foot six inch lot as the "Schuler property." At the time of the original assessment of damages and benefits they were under separate ownership. Respondent acquired the titles to them by purchases at different times during the pendency of the proceeding.

In due course commissioners were appointed to assess benefits and damages. They assessed the damages and special benefits, with reference to the properties herein involved, as follows: Lancaster property, damages $4,650, benefits $1,612; Schuler property, damages $5,125, benefits $2,280. On exceptions filed by the owner (respondent here) the court, after hearing evidence, set the report aside and ordered a new assessment. The second commissioners assessed the damages to the Lancaster property at $7,765.75 and the special benefits accruing to it at $1,290; with respect to the Schuler property they assessed the damages at $10,664, and the benefits at $1,710. In due time the City (appellant here) filed exceptions to the report; the court, after hearing evidence at length with respect to the damages, approved and confirmed the report; thereupon it rendered final judgment of condemnation. From such judgment the City brings the cause here on appeal.

Other facts, including summaries of the evidence offered at the hearings on the exceptions to the commissioners' reports, will be stated in the course of the opinion.

There are two assignments of error: (1) The court erred in sustaining respondent's exceptions to the first report and ordering a

840

new assessment; and (2) the court erred in overruling appellant's exceptions to the second report and in entering judgment thereon. Both assignments rest on the contetion that the trial court's rulings were arbitrary and not guided or controlled by the competent and relevant evidence offered on the hearings.

Respondent argues at length and in great detail that the record presents nothing for appellate review in that, as he asserts, appellant failed to save and preserve its exceptions to the trial court's rulings and thereafter embody them in a proper bill of exceptions. We have examined the record critically with these contentions in mind and find them to be without substance. A discussion of the many questions raised in connection therewith would greatly lengthen this opinion without adding anything by way of exposition to our procedural law.

■ Respondent's exceptions to the first report, which the trial court sustained, were based on the ground that the damages awarded, as to each of the properties, were grossly inadequate. Before entering upon a review of the evidence offered on the hearing as to these exceptions it will not be amiss to note the principles which should guide the trial court in passing upon such exceptions and also those that should control this court in reviewing the trial court's actions with respect thereto. These principles have been enunciated by this court in a number of cases:

"But in a review of the commissioner's report on exceptions thereto the report itself is to be considered and it must stand until it is shown to be wrong either in a point of law or in a matter of fact. This proceeding is statutory and is peculiar. To some extent it has the character of a trial *de novo*, but it is not entirely so. It is not, for example, like a trial in the circuit court of a cause brought up by appeal from a justice's court, in which case the statute requires the circuit court to try the cause anew without regard to anything that occurred at the trial before the justice or to his findings or judgment. . . . And it is not exactly like a review of the verdict of a jury on a motion for new trial, for there the judge who heard the same evidence that the jury heard, weighs the verdict in the light of that evidence. But on a review of the commissioners' report in a condemnation proceedings, the court, from the necessity of the case, must hear evidence, because it has not before it the evidence and facts which influenced the commissioners." [St. Louis v. Abeln, 170 Mo. 318, 323, 70 S. W. 708.]

"On a mere question of value depending on conflicting evidence the circuit court should hesitate to interfere with the commissioners' finding, although in a proper case it has undoubtedly the right and duty to do so. A board of commissioners is the tribunal provided by

our Constitution to do justice in such cases between the city and the citizen. They are selected by the circuit court and should be men of good judgment and honest repute. They have an advantage that the court and even a jury do not have in trying a case, they go upon the land and make a personal observation and study it and its surroundings, besides they have the benefit of such evidence as parties see fit to bring before them. Assuming, as we must, until the contrary is shown, that the commissioners have given the subject their best, careful and conscientious consideration, their finding on a mere question of value is entitled to great weight with the trial judge when he is hearing exceptions to their report.'' [St. Louis v. Brown, 155 Mo. 545, 567, 56 S. W. 298.]

''It is not the province of this court to review the evidence given in the circuit court, with a view of determining whether that court should or should not have set aside the report of the commissioners, but only to see whether there was any testimony tending to support the exceptions, and by which the circuit court should have been guided in rendering its judgment thereon.'' [Railroad v. Almeroth, 62 Mo. 324, 344.]

''This court, however, will not ordinarily review the action of the circuit court in such cases when the testimony is conflicting. It is only when the damages are flagrantly excessive or inadequate that we will interfere.'' [Cape Girardeau, etc., v. Dennis, 67 Mo. 438, 441.]

If there was no substantial evidence that the commissioners' report was wrong, that is, that the damages awarded therein were grossly inadequate, the trial court abused its discretion in setting it aside and ordering a new assessment.

We will consider first the evidence produced at the hearing on respondent's exceptions which relates to the damages accruing by reason of the appropriations of forty feet off of the Lancaster property. Three witnesses, Pfeiffer, Eichenseer and Schramm testified on behalf of Exceptor and three, Hemmellmann, Wood and Darst for the City. Pfeiffer, a carpenter and contractor, estimated the value of the two-story brick building as of March 13, 1919, the date on which the condemning ordinance became effective, at $4,000. The estimate was based wholly on the cost of replacement less depreciation; the land value was not taken into consideration.

Eichenseer, a realtor of many years' experience, testified that the lot was worth $500 a front foot and that after cutting off forty feet it would be worth one-third less. He further testified, in effect, that the building added nothing to the value of the lot because the rental income from the ground alone would be as great, if not greater, than that from the building which occupied the ground. There were some

apparent contradictions in his testimony as to the value, if any, that the building added to the ground, but considering it as a whole it cannot reasonably be construed otherwise than as just stated.

Schramm testified: "On the 13th day of March, 1919, the 21 feet 6 inches of lot 25, being the lot upon which Mr. Lancaster's house stands, was worth $450 a foot. With the 40 feet taken off and 112 feet remaining the lot is damaged about 33 1/3 per cent. . . . I have never paid any particular attention to the improvement, nor made any examination of it to come into court and testify. The particular improvement isn't adapted to the land value in that vicinity at the present time or in 1919."

Hemmellmann, Wood and Darst, testifying for the City, all said that the market value of the lot was $350 a front foot or $2.30 per square foot; that taking forty feet off the lot had not caused damage to the remainder; and that the improvement had added nothing to the value of the lot because it was obsolete. It was admitted that respondent purchased the property through a real estate agency, on January 6, 1920, and paid therefor the sum of $5,500.

■ No objection was made to the reception of the testimony of the witness Pfeiffer as to the structural value of the building on the lot in question, nor was there any motion to strike it out. Yet it should, and may, have been disregarded by the trial court because it was wholly without influence in the determination of the question of whether the award of damages as made by the commissioners was inadequate.

"When a piece of land upon which buildings have been erected and affixed to the soil is taken by eminent domain, so far as the buildings add to the market value of the land, they must be considered in determining the compensation to be awarded to the owner. . . . An owner is not entitled to have buildings or fixtures valued as separate items additional to the market value of the land, but the issue in each case is the market value of the land with the buildings and fixtures upon it. The owner therefore receives nothing for the buildings and fixtures unless they increase the market value of the land." [10 R. C. L. sec. 124, p. 141.]

"Ordinarily buildings are part of the land and when land is taken for public use the buildings and structures thereon are taken with it and the whole must be paid for. They are to be valued as part of the realty. . . . The value of the land with and without the improvements may be shown, but not the value of the improvements apart from the land." [2 Lewis, Eminent Domain (3 Ed.) sec. 726.]

■ It is true that where the character of the structures is well adapted to the kind of land upon which they are erected the cost of the buildings and fixtures, after making proper deductions for de-

preciation by wear and tear, may be a reasonable test of the amount by which they enhance the market value of the land. But that is not the case here. All the testimony is to the effect that the building was obsolete and not adapted to the character of the land. Nor was it allowable for the trial court to draw an inference that the building added to the market value of the land.

"It is not a presumption either *prima facie* or conclusive, that a building necessarily adds a definite amount to the value of property in a city. So much depends upon the purposes for which the property is to be purchased and the character of the buildings. A building which would be valuable in one locality would be a positive detriment in another locality, as for instance, a dwelling house in an exclusively business district." [Real Estate Co. v. McDonald, 140 Mo. 605, 613, 41 S. W. 913.]

█ The proof of the value of the building separate and apart from the land added nothing whatever to the proof of the value of the property as a whole, and for that reason was not an element to be taken into consideration in determining the damages.

The damages computed on the basis of Eichenseer's values is $3,523.83; on the basis of Schramm's $3,225; and on the basis of those testified to by the City's three witnesses, $1,978. The price which respondent paid for the property in 1920, $5,500, is not conclusive as to its value, but is some evidence of the value. As evidence it certainly does not justify a holding that an award of $4,650 as damages for an appropriation of forty feet of it is grossly inadequate.

From the analysis of the evidence it is clear that the trial court was in error in setting aside the commissioners' award with respect to the damages accruing from the condemnation of a portion of the Lancaster property and ordering a new assessment.

█ We next consider the evidence relating to the damages to the Schuler property given at the hearing on respondent's exceptions to the first commissioners' report. Pfeiffer's testimony went merely to the value of the building, which he placed at $3,500. Eichenseer valued the whole property—28 feet and 6 inches—at $500 a foot plus $2,500 for the improvement, or $16,750. He said taking 40 feet off the lot would depreciate it to the extent of one-third of its value, that is, to the amount of $4,750. That this sum plus the value which the improvement added would constitute the amount of the damages, namely, $7,250. He pointed out in his testimony that the rental income from the building would exceed that from the ground alone and for that reason the building added to the market value of the lot to the extent, according to his computation, of $2,500. Schramm and the three witnesses for the City placed the same values respectively on the Schuler property that they did on the Lancaster property,

allowing nothing for the building. Schramm said the remaining 112 feet of the lot would be worth 33 1/3 per cent less than the lot was worth before the appropriation. According to his values the damages were $4,750. According to the estimates of the City's witnesses the damages were $2,622.

The award of the commissioners was $2,125 less than the damages computed on the basis of the values testified to by witness Eichenseer, though greater than the amount derivable from the testimony of any other witness produced at the hearing. It was for the trial court to resolve the conflicts in the evidence. On the basis of Eichenseer's testimony, which the court no doubt accepted as more nearly approximating the facts than that of the others, it cannot be said that the commissioners' award was not inadequate. The trial court cannot therefore be convicted of error in setting the award aside and ordering a new assessment.

We come next to the second report of commissioners. In so far as it reports the assessments of benefits and damages resulting from an appropriation of a part of the Lancaster property it will be disregarded because such assessments were erroneously ordered. With respect to the Schuler property it shows that the damages were assessed at $10,664. The City (appellant) excepted to the report in this particular on the ground that the award was grossly excessive.

At the hearing on the City's exceptions the estimates of values given by its witnesses, and consequently the damages based on those estimates, were much lower than the estimates and the damages computable from them of respondent's witnesses. The testimony of the City's witnesses may therefore be put aside.

Respondent offered as witnesses Gugerty, Zebig, Eichenseer and McDonald. Gugerty was a building contractor. He testified to nothing more than the cost of constructing such a building and the depreciation which should be allowed for wear and tear. His testimony is therefore eliminated from consideration.

Zebig, engaged in the real estate business in the City of St. Louis, valued the property at $500 a front foot; he allowed nothing for the building on the ground that it was obsolete.

Eichenseer valued the property at $500 a front foot plus $3,000 for the building. The damages, according to his values, were $7,750.

McDonald had been engaged in the real estate business for more than thirty years. His testimony is so at variance with that of every other witness who testified at either hearing that we set out the material portions of it:

"I am familiar with the property on South Twelfth street known as the Lancaster home and the Justice of the Peace property. I have

examined it and heard the testimony here. I would say the reasonable market value of the ground in February, 1919, would be $500 a foot. . . . If 40 feet were taken off those two lots, reducing them from 152 feet to 112 feet, in my opinion the loss and damage to the property is over one-third. . . . The improvements are there and they are bringing in rent until you put up something better. I understand Mr. Lancaster had his home there and place of business, a suitable place for him. I would place a value on the improvements, when valuing the land, at $500 a foot. . . . You would not buy that property on an income basis. You could hardly lease the residence for a business. You couldn't improve a residence like that for a business; you have gotten to a point where you have to raze it and rebuild.

"The piece where Justice Schuler is brings in a pretty good income now. The residence has been kept in pretty good shape. I would say it was worth $4,500 or $5,000 on the residence and about $8,000 or $9,000 on the Justice Court, in addition to my $500 a front foot."

The damages, if computed on the valuations given by this witness, were from $12,750 to $13,750.

The trial court was at liberty to disregard the estimates of value given by all other witnesses and accept as correct those of McDonald. This it evidently did. As we cannot say that McDonald's testimony did not constitute substantial evidence in support of the commissioners' award, the trial court's action with respect to it must stand.

The judgment of the circuit court is reversed and the cause remanded with directions to that court to set aside the second commissioners' report in so far as it relates to the assessments of damages and benefits with reference to the Lancaster property, reinstate and confirm the first report in respect to such assessments and then enter final judgment conformably thereto. All concur.