CITY OF ST. LOUIS, Appellant, v. SENTER COMMISSION COMPANY ET AL., Defendants, LUKE E. HART and ISRAEL TREIMAN, Receivers of the BLANKE-WENNEKER CANDY COMPANY; BLANKE-WENNEKER CANDY COMPANY, Respondents.—82 S. W. (2d) 87.

Court en Banc, April 16, 1935.

*Charles M. Hay, John T. Hicks, James B. Steiner* and *Seward McKittrick* for appellant.

822

*Clarence T. Case, David W. Voyles* and *George L. Stemmler* for respondents.

TIPTON, J.—This case comes to the writer on reassignment and is a proceeding in condemnation. It was brought by the city of St.

Louis, under the provisions of Ordinancê 31656, as amended by Ordinance 35582, which provided for the widening of Market Street in that city. The effective date of the ordinance was May 18, 1922. The city has appealed from the final judgment of the circuit court approving item 22 of the commissioners' report. This item describes a tract of land owned by the respondent, Blanke Bros. Realty Company. In 1921, the owner renewed a lease to the respondent, Blanke-Wenneker Candy Company, for a term of five years, the lease expiring March 31, 1926.

On April 25, 1928, Otto F. Karbe, a stockholder of the Blanke-Wenneker Candy Company, filed a petition in the Circuit Court of the City of St. Louis, wherein he asked that a receiver be appointed to take charge of the assets of the candy company. On this petition, Division Two of that court appointed Luke E. Hart and Israel Treiman, receivers for this company. The petition alleged that on April 7, 1928, at a meeting of the stockholders of this company, a resolution was adopted, that empowered "the board of directors to take all necessary steps to discontinue the active business of the company, to pay all its liabilities and collect in all its property, and to liquidate said corporation."

The commissioners fixed the value of the actual damages to the parcel of land described in this item at $272,400, and assessed the benefits at the sum of $9000. This award was made to the Blanke Bros. Realty Company. The commissioners attempted to award damages in the sum of $85,000, to the Blanke-Wenneker Candy Company.

Hereafter the Blanke Bros. Realty Company will be referred to as the lessor and the receivers of the Blanke-Wenneker Candy Company will be called the lessee. The city, the lessor and the lessee filed exceptions to the awards. The exceptions were tried in the circuit court principally upon a stipulation signed by all parties. It provided that the only question the court should decide is as follows:

"Is the Blanke-Wenneker Candy Company entitled to an award of $85,000.00 for certain trade fixtures which are referred to in that part of the award of the commissioners separately made to the Blanke-Wenneker Candy Company?"

In considering the above question it was agreed that prior to the passage of the condemnation ordinance, the lessee installed fixtures upon the premises in the conduct of its business; *that the term 'trade fixtures' as used herein shall be construed in its legal and technical sense and not as a mere mercantile term or designation applied to chairs, tables, iron safe and such like.* It was also agreed that the language used in the separate award for the fixtures "shall be for naught held and esteemed, either in favor of or against any party hereto," in determination of the issue herein presented; "it being also understood and agreed that out of all the items of damages

claimed herein by the Blanke-Wenneker Candy Company in its exceptions *there is and was an item for trade fixtures as herein defined of the value fixed for which no compensation was awarded to either Blanke Bros. Realty Company or Blanke-Wenneker Candy Company."* It was also agreed that whatever interest, if any, that the lesser had in and to the fixtures had been assigned to the lessee "and this after the expiration of the lease." A copy of the lease was attached to the stipulation.

The lessor and the city both withdrew their exceptions to the award of the damages in the sum of $272,400, and the award of benefits as fixed at the sum of $9000, and agreed that the court should amend and modify the award of the commissioners so as to allow the lessor the total net award of $263,400.

The stipulation also contained a provision that all other issues, presented by any exception of any of the parties are withdrawn except the question set out above, and that "no evidence shall be admitted in contradiction of or to prejudice of any fact herein agreed upon. *No evidence shall be adduced as to what is or is not a trade fixture."*

The stipulation further provided that if the court decided that the lessee was not entitled to recover, then the city's exceptions should be sustained, but if the lessee was entitled to recover then the city's exceptions should be overruled and a separate award made to the lessee "in the sum of $85,000.00, shall be so amended and modified as to award said Blanke-Wenneker Candy Company the aforesaid sum for damages for the trade fixtures taken by said condemnation."

The stipulation also provided that any party had the right of appeal from the judgment of the trial court, "but on such appeal only such issues of law or facts may be urged as are within the limits of this stipulation."

As above stated the lease expired on March 31, 1926. This lease did not contain an option for renewal, and it did not provide for the removal of fixtures at the end of the term. However, the evidence showed that the lessee had been occupying these premises since 1904. After the receivership suit was filed rent was first reduced from $15,000 to $7200 annually. Later an agreement was approved by the court, whereby the lessee was permitted to jointly occupy the premises with the lessor at a nominal rent of $10 per month.

The commissioners' report was filed November 20, 1928. The exceptions of the city were overruled on December 24, 1930, and final judgment was entered May 17, 1932. Other essential facts will be stated in the course of this opinion.

I. The appellant states the question to be determined is as follows: "Can a tenant whose lease expires, pending condemnation case, claim any award for trade fixtures in any case?"

This question must be decided in view of the stipulation signed by

all the parties of this controversy. The first question for us to determine is what are "trade fixtures" as that term is used in the stipulation. The stipulation says: "That the term 'trade fixtures' as used herein shall be construed in its legal and technical sense and not as a mere mercantile designation applied to chairs, tables, iron safe and such like."

In the case of the City of St. Louis v. St. Louis Iron Mountain & Southern Railway Company and Regal Buggy Company, 266 Mo. 694, 695, 1. c. 708, 182 S. W. 750, in discussing the word "fixtures" as herein used, we said:

"We assume, of course, nothing further appearing, that the word 'fixtures' is used in its legal and technical sense, and not as a mere mercantile designation applied to chairs, tables, iron safe, *et id omne genus*.

"A fixture appertains to the real estate itself, which real estate to the extent, at least, of an easement therein, is being taken by condemner. We need not enter into any intricate discussion of fixtures (since such discussion does not belong here), for the reason above given, which is well-settled, to-wit: that a trade fixture such as is herein involved, and such as was to an extent involved in the case of Hannibal Bridge v. Schaubacher, supra, is a part of the realty; and since it passes ordinarily as between vendor and vendee, upon a voluntary sale, we see no reason why it should not pass to the condemner upon an involuntary transfer, such as this is. We find nothing in the Missouri cases, nor in the cases from other jurisdictions which seriously militates against this view. Those mentioned below sustain it. It seems to be right on principle; to do full justice and afford full compensation."

In that case, we also said:

"Since houses, which are but fixtures to real estate, pass to the condemner (Kansas City v. Morse, 105 Mo. 1. c. 519), and since trade fixtures under the vendor and vendee rule would pass to the buyer, they pass here to the condemner and it must pay for them. Respondent, absent an election on its part and consent of the city to that end, could not take fixtures which the city had condemned, nor obtain as damages pay for moving property which by condemnation became that of the city. [Kansas City v. Morse, 105 Mo. 1. c. 519; Springfield S. W. Ry. Co. v. Schweitzer, 173 Mo. App. 650.]

"It follows from all this that respondent was entitled to be paid the reasonable market value of its fixtures (contradistinguished from mere goods and chattels) which were contained in, and affixed to the leased premises condemned."

In that case the lease had not expired at the time that the property was appropriated. While in the case at bar the lease had expired when the property was taken, but by the stipulation it was stated that neither the lessor nor the lessee had been paid for the

"trade fixtures" in the award to the lessor. There was no provision in the lease in the case at bar giving the lessee the right to remove the fixtures. Under the authority of the Regal Buggy case, supra, "trade fixtures" are a part of the realty and must be paid by the condemner to either the landlord or tenant.

In the recent case of City of St. Louis v. Ross, 333 Mo. 1092, 64 S. W. (2d) 600, l. c. 607, we said:

"The rule they (commissioners) adopted for valuing improvements (difference between the cost of removal and the value of salvage) is not correct. They should find and allow, as damages for the land taken, the value of such land with the buildings thereon as a whole; that is what the land, improved as it was on March 26, 1919, was then worth. They should, therefore, as to buildings or other improvements affixed to the soil so as to become real estate, instead of valuing the land and buildings separately, consider the amount which such buildings add to the market value of the land taken and arrive at the value of the whole (injury to buildings on land not taken, if any, should be considered in connection with consequential damages) without regard to who put the buildings there or the right to remove them. These are matters to be considered when it comes to apportioning the damages between the owner and lessees, but do not concern the commissioners."

It is apparent from the record that if the commissioners in the case at bar had assessed the value of the land with the improvements on it and let the court determine the interest of the respective parties in the damages awarded, the commissioners would have included the $85,000, in their award. In other words, their award for damages would have been $272,400 plus $85,000, for the fixtures and land with benefits assessed at $9000.

Under the stipulation the lessor had assigned any interest it had in the fixtures to the lessee and the lessee had relinquished any interest it had in the award of $272,400.

The appellant cites numerous opinions from other states holding that where a lessee failed to remove trade fixtures before the expiration of the term, they were not entitled to an award for the same in condemnation proceedings. We will not discuss all these cases, but we will discuss the case of Schreiber v. Chicago & E. Railroad Co., 115 Ill. 340, 3 N. E. 427, as this is cited with approval in the other cases cited by appellant. In that case the tenant was not allowed compensation for fixtures that had not been removed at the date of the expiration of the lease. In discussing that case, a note in 75 American Law Reports, page 1497, says, "The opinion in that case does not disclose whether the landlord's award included the value of the trade fixtures." While in the case at bar, it is expressly stipulated that neither the lessor nor the lessee had been paid for the trade fixtures.

In 1 Nichols on Eminent Domain (2 Ed.), section 234, the author said:

"It frequently happens that, in the case of a lease for a long term of years, the tenant erects buildings upon the leased land or puts fixtures into the buildings for his own use. It is well settled that, even if the buildings or fixtures are attached to the real estate and would pass with a conveyance of the land, as between landlord and tenant they remain personal property, and, in the absence of a special agreement to the contrary, may be removed by the tenant at any time during the continuation of the lease provided such removal may be made without injury to the freehold. *This rule is however entirely for the protection of the tenant and cannot be invoked by the condemning party.* If the buildings or fixtures are attached to the real estate, they must be treated as real estate in determining the total award, but in apportioning the award they are treated as personal property and credited to the tenant. A tenant is not however entitled to recover for buildings or other property not attached to the realty." (Italics ours.)

We hold that the term "trade fixtures" as used in the stipulation means fixtures which are attached to and become a part of the realty and the condemner must pay for them, the same as he does the land, though the rule would be different between landlord and tenant. In view of the fact that the stipulation stated that any interest that the lessor had in these fixtures had been assigned to the lessee, we believe that the trial court was correct in overruling the exceptions of the appellant to the award for "trade fixtures" and in modifying the award to conform to the stipulation.

II. After the hearing and before the court passed on the exceptions, the appellant filed a motion to set aside the submission on the ground that the receivers of the lessee had sold property belonging to the lessee that was trade fixtures.

The only witness in support of the motion was Mr. Israel Treiman, one of the receivers. He stated that the court (Division Two of the circuit court) was petitioned to sell certain property which petition was granted. He explained that the property sold was substantially that contained in the receivers' partial inventory, which, in his opinion was not included in the property covered by the award of the commissioners; that the court was specifically asked for authority to sell all the property, which was not trade fixtures, that were involved in the condemnation proceedings. He attempted to explain from a paper called Exhibit A, which he said was used before the commissioners, in showing what property was considered trade fixtures. The appellant offered no evidence as to what amount of property had been taken into consideration when the sum of $85,000 was agreed upon. It did not offer to show the court that the items agreed upon as trade fixtures, out of all those mentioned in respondents'

exceptions, were included in those described in the report of sale. In fact, the closing part of the testimony of this witness is as follows:

"Mr. Steiner (Q.): I will ask you if all the candy manufacturing machinery and equipment of the Blanke-Wenneker has not been sold? A. All the what?

"Q. All of the machinery and equipment used in the manufacture of candy by the Blanke-Wenneker Candy Company—I will ask you if it was not sold by the Receivers?

"Mr. Voyles: We object to that, because the statement 'machinery and equipment' is too broad. He has already been going into the details.

"The Court: You are asking him now for his conclusion as to what the term 'machinery and equipment' covers. Now, you have an inventory and have a statement here which you should offer of what took place at the sale—what was sold out of there is a question of construction.

"Mr. Steiner: I think it is a proper question.

"The Court: I don't think it is. You couldn't in any other suit. The first objection would be let them tell what was sold and we will find out. Of course, it is a conclusion; he cannot place his construction upon it.

"Mr. Steiner: I see the point there on that, your Honor. I think, as far as this motion is concerned, that is all the questions I have to ask."

Certainly under this showing we could not convict the trial court of error in overruling appellant's motion to set aside the submission on the exceptions. To our mind there is no showing that property sold by the order of the court was the same that was involved in the condemnation proceedings.

Finding no prejudicial error in the record, the judgment of the trial court is, therefore, affirmed. All concur, except *Coles, J.;* not sitting.