STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Appellant,

v.

Leo J. DOCKERY et al., Defendants,

Cardinal Paint Company, a Corporation, Respondent.

No. 45754.

Supreme Court of Missouri,

Division No. 1.

April 8, 1957.

Robert L. Hyder, Minor C. Livesay, Elliott M. Dampf, Jefferson City, Albert Miller, St. Louis, for appellant.

Kappel & Neill, Walter S. Berkman, St. Louis, for respondent.

HOLLINGSWORTH, Presiding Judge.

The State Highway Commission of Missouri, hereinafter referred to as plaintiff, has appealed from a judgment awarding damages in the sum of $61,000 to Cardinal Paint Company, a corporation domiciled in the City of St. Louis, Missouri, hereinafter referred to as defendant, as the value of its factory site and factory taken in condemnation by plaintiff for State highway purposes. The basic question for determination is whether the trial court erred in permitting defendant's witnesses to give in evidence their estimates of the damage sustained by defendant and in instructing the jury to arrive at its award through a process of totalling separate reckonings of the value of the land, the value of the factory building and the value of the machinery and equipment installed in the factory. Plaintiff contends that such a method of estimating and awarding damages in condemnation proceedings is contrary to established procedure and was prejudicially erroneous. Defendant contends that such a method is approved procedure in the instance of a factory designed and equipped with fixed machinery with the intention and purpose of making such machinery a permanent part of the building.

Defendant was incorporated in 1937. It is engaged in the manufacture of paint, enamels and varnishes and the sale thereof, principally through the medium of jobbers, to retail stores. Defendant acquired the lot on which its factory is situate prior to March, 1946, and the lot immediately to the south thereof in 1950. These lots, being the land taken by plaintiff, have a total frontage of 79 feet, 3 inches, on the west side of North Sixth Street, near the intersection of North Sixth Street, Cass Avenue and Broadway, and extend back westwardly to an alley. There was a two-story building situate on the north lot when defendant purchased it. The building was 40 feet in width and had a varying depth of from 98 to 109½ feet. It had been vacant for several years. Its arrangement and condition was such as to make its interior wholly unadaptable to defendant's use and its exterior was in a bad state of repair. The site, however, was of particular advantage to defendant because it is in the heart of the trucking district and all of defendant's shipments are made by trucks. It is also close to the Mississippi River bridges connecting the City of St. Louis with Illinois, in which State defendant does a substantial portion of its business.

Upon acquisition of the property, defendant began, and between 1946 and 1951 completed, extensive remodeling and rehabilitation of both the exterior and interior of the building. The old front of the building was replaced with a new front, consisting of pressed brick and glass blocks, together with new and additional windows. The outer walls were tuckpointed and repaired. An opening was made in an outer wall from which a boom was projected and a power hoist that rolls upon tracks was installed. Inner partition walls were removed; wooden floors were replaced with concrete. A large balcony, in effect a third floor, extending over 80 per cent of the square footage of the building was installed. The heating system was converted to steam, a sprinkler system and complete power wiring were installed throughout the building. An old elevator was removed and a conveyor extending through the floors was installed. New offices, new lavatories, and a laboratory and storage racks were built. The interior was arranged and machinery and equip-

ment were installed so as to convert the building into a "gravity feed plant" for the handling of the materials and the manufacture, packaging, labeling and storing of defendant's products. In that process, the materials necessary to manufacture are assembled and roughly mixed on the third floor, fed downward through conduits to the floor below, where they receive further processing, thence to a lower floor, where they are still further refined, thence "finally simmering" into the can-filling and packaging department. The lot adjoining the building on the south was made into a parking area, supported by a retaining wall in the rear; a concrete driveway was laid thereon and the area, as thus improved, was enclosed with a chain fence and gates.

The equipment installed by defendant consists of mixing, grinding, thinning and filling machines, storage tanks and racks and labeling and packaging devices. The third floor was constructed to withhold the weight of the materials. Holes are cut in the third (balcony), second and first floors to permit the materials to pass downward through conduits and conveyors as they go through the various stages of manufacture. The machinery, much of it heavy, is affixed to the building. Some of it is "lagged" into the floor; other machines are recessed in or bolted to the floor. Belts and pulleys used in the operation of the motor-driven machinery extend from floor to floor through openings provided therefor. These machines, storage tanks, conveyors, etc., are either connected with each other or are permanently affixed to the building. Some of these machines weigh 10,000 to 12,000 pounds. Hoisting and conveying apparatus is suspended from heavy timbers installed in the ceilings for that purpose.

Al J. Klump, president of defendant company, testified that defendant expended "approximately $60,000" for the purchase of the land and rehabilitation of the land and building. However, upon motion of plaintiff, the trial court struck the testimo-ny for the reason "that he said approximate and not the exact cost".

George H. Hetlage, a duly qualified expert, appraised the value of defendant's property, as follows: The construction cost of the building, new, including plumbing, heating, lighting and sprinkling system, would be $100,879. The land value is $14,000, the power feed wiring cost was $2,082, and the reproduction cost of the fixed machinery and equipment would be $41,376. The total of the value of the land, reproduction cost of the building, improvements, power feed wiring, fixed machinery and equipment is $158,337. The property is well adapted to the requirements of a paint manufacturer and it is in good condition. The reasonable market value of the land, building and fixed machinery and equipment, as a whole, on the date of taking, was $105,194. This figure does not include movable personal property such as office furniture, tools, etc. Each piece of machinery and equipment included in the above appraisal was actually affixed to the building. The property was appraised at its market value. Witness did not assign a peculiar or special value to the property because it was an operating business. He did assign a value that reflected what a willing buyer, who was going to use the property in the form in which it then existed, would pay.

During the direct examination of witness Hetlage, he testified as follows:

"Q. And what basis did you use in determining that value? A. I relied principally upon what is—the process that is known as the 'Summation Process'. That process consists of valuing land as though it were bare land except that the land is valued in recognition of the improvements that exist on it; then by this process the improvements are valued, and then the two are combined to furnish a total value of the improved property. The process consists first of valuing the land and second of calculating the construction cost new of the improvements.

and finally of deducting from the reproduction cost new of the improvements appropriate allowance for depreciation."

Counsel for plaintiff objected to this answer for the reason:

"That this witness, by his testimony, is valuing the property as two separate units, the land and the buildings, and is not valuing the property as a unit in its entirety."

"The Court: Well, he's reaching the same conclusion. I mean the total conclusion can be reached by valuating the land separate from the building, and then the building, and then adding them both together; so I'll overrule it. His method I can't hardly control. You may proceed."

On cross-examination, the witness further testified:

"Q. After you valued the land at $1.71 per square foot, or $14,000, then you superimposed on that a building; is that right? A. No, I don't believe it would be quite right to say that I superimposed a building on that. I'm valuing a property, an improved property; I'm not valuing land as something separate and apart from everything else, and I'm not valuing any of the other elements of the property as something separate and apart from the rest of it, but I am approaching the value of the whole by treatment of the elements of the property.

"Q. Well, now, isn't— A. Which is the logical and reliable process for valuation of an industrial property of this type.

\*   \*   \*   \*   \*   \*

"Q. So you valued the land separately, $14,000, and the depreciated value of the building on that as another item that you added to it; is that right? A. As I said a minute ago, those are the elements assignable—those are the amounts assignable to those elements of the property in establishing a total. They are not valued entirely as separate things entirely apart from the rest of the property. This is a process by which the market value is established.

"Q. Well, how does it vary from the cost of the lot or the value of the lot plus the cost of the construction of the improvement on it less that depreciation of the improvement? A. It doesn't vary at all from that except that I want to make it clear that these things are established in relation one to another; they are not established as separate foreign things."

The witness also described at length certain pieces of the machinery attached to the floors or walls of the building. During a series of objections made by plaintiff to the inclusion of these items as a part of the realty, counsel for plaintiff stated his understanding of the position taken by defendant and adopted by the trial court, thus: "And, further, may I clarify, that anything that is attached to the floor by bolts the Court rules that automatically that becomes a part of the real estate regardless of whether or not it is susceptible of being removed without damage to the article or the premises." The trial court replied: "I'm not ruling that question according to your thinking on that: I'm ruling that anything that's permanently attached to the building, with no thought of removal, is part of the realty. You may proceed."

Plaintiff's evidence as to the value of the property in question consisted of the testimony of four witnesses:

William S. Garton disclaimed any expert knowledge as to the value of the machinery in the building, but, after qualifying as an expert as to the value of real estate in the vicinity of the defendant's factory, was asked by plaintiff's counsel to give his "opinion of the value of this property" as of the date taken. His answer was that the value of improvements,

estimated upon the basis of reproduction cost, less depreciation, was $22,385; the land, $6,130; total, $28,430 ($28,515?). Joseph B. Brooks, a qualified appraiser of machinery, testified as to the values of various major items of the machinery in defendant's factory and the different ways in which they were attached to the building or to other equipment, such as motors, conduits, etc. The aggregate value of the various items of machinery as appraised by him was $14,380. A. H. Stiel, a building contractor, testified that the reproduction cost of the building would be 43 cents per cubic foot, to wit: $63,855. To this amount he added $3,250 for the sprinkler system, making a total of $67,105, which he depreciated $36,907.25, by reason of wear and obsolescence, leaving a depreciated value of $30,908. He placed no value whatever on the land and did not include its value in his estimate. Arthur A. Schneider, an expert appraiser of real estate, testified that the value of the tract and the improvements (exclusive of the machinery, of which he disclaimed expert knowledge), computed both upon an estimated rental and a cost of reproduction, less depreciation, basis, was $31,000, of which amount he allocated the sum of $6,700 (reckoned, he said, at 80 cents per square foot) as the value of the land.

Plaintiff assigns error in (1) the admission of the testimony of respondent's witness Hetlage as to the respective values of the land, the building and the fixtures attached to the building; (2) in the refusal of plaintiff's Instruction A, which would have directed the jury to exclude from its award the value of "any of the equipment or machinery located on the premises herein [that] can be removed without substantial injury either to the real estate or to the article * * *"; and (3) in the giving of defendant's Instruction No. 1, directing the jury: "* * * if you find and believe from the evidence that prior to November 28, 1955, (the date of the taking) the fixed machinery and equipment described in evidence were installed in and attached to the factory building by the Cardinal Paint Corporation and were necessary for the manufacture of paints and related products; and * * * that the Cardinal Paint Corporation intended that such fixed machinery and equipment should become a permanent part of the factory building; and * * * that on and prior to November 28, 1955, the Cardinal Paint Corporation was using its factory building and the said fixed machinery and equipment for the manufacture of its products, then you should award damages to the Cardinal Paint Corporation in that sum which equals the fair market value of the land, factory building and the said fixed machinery and equipment installed therein, as of November 28, 1955." These assignments are so interrelated as to warrant their joint consideration.

In the case of City of St. Louis v. Turner, 331 Mo. 834, 55 S.W.2d 942, 944–945, cited by plaintiff, this court held that in condemnation proceedings the issue is the market value of the land with the buildings and fixtures upon it; and that the value of the land with and without the improvements could be shown, but not the value of the improvements apart from the land. In that case, however, the evidence showed that the building was obsolete and not adapted to the character of the land, which led the court to further observe that "'the owner therefore receives nothing for the buildings and fixtures unless they increase the market value of the land.'" The opinion then goes on to state: "It is true that where the character of the structures is well adapted to the kind of land upon which they are erected, the cost of the buildings and fixtures, after making proper deductions for depreciation by wear and tear, may be a reasonable test of the amount *by which they enhance the market value of the land.*" (Emphasis ours.) Certainly, that case does not help plaintiff. Not only did defendant's witnesses in the instant case testify that the building and fixtures on defendant's land enhanced the value of the property as a unit or whole to the extent of cost of reproduction, less depreciation, but plaintiff's witnesses esti-

mated the value of defendant's property precisely upon the same theory, except that they did not include the machinery and equipment as a part of the realty.

Plaintiff has also cited the case of City of St. Louis v. Rossi, 333 Mo. 1092, 64 S. W.2d 600, in which the court held that in condemnation proceedings the commissioners should find the value of the land with buildings thereon as a whole. But the court also held that, in arriving at that value, 64 S.W.2d loc. cit. 607, "it is proper for them to take into consideration the leases then upon the property, the income which the property owner derived therefrom, and how long they continue after that date, as well as all other matters which go to make up the market value of property; *and that would include the value added by buildings and improvements.*" (Emphasis ours.) Neither does that case aid plaintiff.

Plaintiff has also cited the case of City of St. Louis v. Senter Commission Co., 336 Mo. 820, 82 S.W.2d 87. Why it is cited is not apparent. The case reaffirms City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 266 Mo. 694, 182 S.W. 750, loc. cit. 754, L.R.A.1916D, 713, wherein it is said: "Since houses, which are but fixtures to real estate, pass to condemner (City of Kansas v. Morse, 105 Mo. [510] loc. cit. 519, 16 S.W. 893), and since trade fixtures under the vendor and vendee rule would pass to the buyer, they pass here to the condemner, and it must pay for them." The case of Proceedings for Condemnation of Private Property for Sixth Street Expressway, Kansas City v. National Engineering & Mfg. Co., Mo.App., 274 S.W. 2d 490, loc. cit. 492, also cited by plaintiff, merely holds, as does City of St. Louis v. Turner, supra, 331 Mo. 834, 55 S.W.2d 942, that in condemnation proceedings, "[t]he value of buildings and fixtures is only important as affecting the value of *land* being condemned, if the land is thereby enhanced in value."

Plaintiff however does cite two federal court cases, Futrovsky v. United States,

62 App.D.C. 235, 66 F.2d 215, and Potomac Electric Power Co. v. United States, 66 App.D.C. 77, 85 F.2d 243, both decided by the U. S. Court of Appeals of the District of Columbia, wherein it is held that in *federal condemnation proceedings* fixtures that can be removed without substantial injury either to the real estate or to the fixtures remain personalty and do not pass to the condemner. Those cases, on their face, support plaintiff's position, but the trouble with them is that they announce the law of the District of Columbia, which is contrary to the law of Missouri. See City of St. Louis v. St. Louis, I. M. & S. Ry. Co., supra, 266 Mo. 694, 182 S.W. 750, L.R.A. 1916D, 713, and the authorities therein cited; City of St. Louis v. Senter Commission Co., supra, 336 Mo. 820, 82 S.W.2d 87.

In the recent case of United States v. Becktold Co., 8 Cir., 129 F.2d 473, 477, the matter here in issue was discussed at length. The facts are strikingly analogous to the facts in the instant case. The United States, under the Historic Sites Act, 16 U.S.C.A. § 461, condemned Becktold Company's bookbinding plant in the City of St. Louis and the land upon which it was situate. Becktold had purchased the building with the view of making it a permanent location for its business, had remodeled it with that purpose in view and had installed machinery therein with the intention that it become a permanent housing place for it. The court held: "Whether or not these fixtures and machinery under the facts disclosed constituted a part of the realty was dependent upon the law of the State of Missouri, the lex loci rei sitae. This was a question of real estate law which must always be determined by the law of the state in which the realty is located. * * *

"We therefore look to the law of Missouri. It is well established by controlling decisions of Missouri that where machinery is placed in a building and the land, building and machinery are used together as a factory or plant, the machinery is a

part of the realty. * * * We conclude that the machinery and fixtures constituted a part of the realty which the Government was condemning. With this in mind, we consider the objections interposed by the Government to certain of defendant's testimony."

The opinion goes on further to relate that experts testified as to cost of reproduction, less depreciation; that in some instances the testimony dealt only with the building proper, in other instances it dealt with fixtures; that there was opinion evidence of value of the separate elements of the property, land, building and machinery, and also of the property as a whole. Such testimony was held entirely proper on the theory that the *value of the property taken was the land as enhanced by the value of the structures and fixtures*. So, too, have our Missouri courts held in the cases of State ex rel. State Highway Commission of Missouri v. Pope, 228 Mo.App. 888, 74 S.W.2d 265, 268, and In re Armory Site in Kansas City v. Aronson, Mo., 282 S.W.2d 464.

█ The trial court did not err in permitting the witness Hetlage to give in evidence his separate estimates of the value of each of the three elements, upon which he predicated his final estimate of the fair market value of the real estate as a unit or whole. In stating his conclusion as to the fair market value of the property taken by plaintiff, the witness expressly stated that he was appraising the property as "an improved property" by taking the elements "in relation one to another", which was but another way of estimating defendant's total damage by adding to the value of the land the amount to which it was enhanced by the improvements thereon.

██ The foregoing authorities also adversely rule plaintiff's contention that its proffered Instruction A should have been given. The rule in Missouri is, as defendant's given Instruction No. 1 hypothesizes, that if the machinery and equipment described in evidence were installed in and attached to defendant's factory building for use and were used in the manufacture of its products and that defendant intended such machinery and equipment to become a permanent part of the realty, they then became realty and an element of damages to the extent they enhanced the value of the property as a whole. The evidence warranted a finding of facts as hypothesized and the jury so found them to be.

█ We are constrained to hold, however, that the portion of defendant's given instruction directing the jury, upon finding the facts to be as above hypothesized, to award defendant damages "in that sum which equals the fair market value of the land, factory building and the said fixed machinery and equipment installed therein" is technically erroneous. The true measure of damages under the facts above hypothesized is the value of the property as a whole. Such a value does not *necessarily* amount to the total of the separate and unrelated values of land, structures and fixtures. The true measure is, as stated, the extent to which they enhance the value of the land. In some instances structures and fixtures may even detract from the value of the land. But if the improvements are such as to enhance the land value to the extent of cost of replacement, less depreciation, then it is proper to arrive at the value of the whole property by totalling the separate values of each. That is true in this case.

The witnesses for both parties were in agreement that in this case plaintiff's land was enhanced to the extent of the estimated replacement cost of the improvements, less depreciation; each expressly so based his estimate of value of the property as a whole. So, too, were the parties, as is demonstrated by defendant's proffer of Instruction No. 1, and the sole assignment of error in plaintiff's motion for new trial to the giving of it. That assignment is: "That the court erred in giving and reading to the jury, over the objection of this Relator, Instructions numbered One, relating to machinery and equipment, and Three, relating to the credibility of witnesses." Thus, it is seen

that the only error assigned to the giving of Instruction No. 1 is the alleged error of inclusion of machinery and equipment as a part of the realty and, consequently, as an element of damage. So, therefore, while Instruction No. 1 was technically erroneous in declaring the measure of damages in condemnation of a factory property to be the total value of land, buildings and machinery and equipment, yet it is apparent, despite such error, that under the theory of both parties the value of defendant's property in this instance was the value of the land enhanced to the full extent of the cost of reproduction of the permanent improvements thereon, less depreciation, except, of course, that plaintiff would exclude machinery and equipment as a part of such improvements, which, as shown is untenable. Actually, therefore, the error could not have been prejudicial. See City of St. Louis v. Turner, supra, 331 Mo. 834, 55 S.W.2d 942. Plaintiff cannot on appeal successfully seek reversal on grounds inconsistent with its trial theory.

■ Plaintiff finally contends that the court erred "in rejecting testimony of [plaintiff's] witness, Garton, on redirect examination for the purpose of explaining the sale of other property, the price of which had originally been offered by [defendant]." It appears that on cross-examination of Garton by defendant's counsel, Garton admitted that a certain lot in the vicinity of defendant's factory, and which defendant claimed was comparable insofar as land values were concerned, had sold for $10,500, but further testified that the price was not the reasonable value. On redirect examination, plaintiff made the proffer that "if this witness were permitted to testify that he would testify that the property sold was not worth the market value for the reason of the need of the party for the property. The witness would testify that the property was sold for a much less figure shortly before the highway went through there; that at the time the highway went through it took the parking lot of the Sligo Company and that they were in the market and had to have a parking lot for their prop-

erty and, therefore, had to pay an exaggerated price for the property due to their particular need for a parking lot, and did so pay that price, and no other price in the community matches that price any time within the past fifteen years." The proffer, on its face, reveals that much of it would constitute hearsay. Plaintiff does not contend otherwise.

■ It is competent to bring out any relevant facts upon which the expert witness bases his opinion, Deal v. St. Louis, I. M. & S. Ry. Co., 144 Mo.App. 684, 129 S.W. 50, 52, but such witness may not under the guise of giving the basis of his opinion lug into evidence that which otherwise is incompetent. In re Armory Site in Kansas City v. Aronson, Mo., 282 S.W.2d 464, 472. The trial court did not err in excluding such testimony.

Following transfer of this case on appeal, plaintiff filed in this court a "motion for appointment of commissioner to hear additional evidence". The burden of that motion is an allegation that subsequent to trial of the cause defendant "vacated said premises, and all of the equipment, machinery and fixtures located in the improvements on said premises was by the defendant removed from this location to some other location of defendant's selection; and that said equipment, machinery and fixtures are those items which were valued as a part of the damage in the trial of this case * * * under Instruction No. 1." The prayer is that this court appoint a commissioner "to take evidence herein involving and proving or disproving the facts alleged herein and for such further relief as the court may consider proper."

■ The opinion herein squarely holds that by virtue of this proceeding plaintiff took from defendant and was legally adjudged to pay defendant the sum of $61,000 for the land, factory building, "and the said fixed machinery and equipment installed therein", on November 28, 1955, the date of the taking. Obviously, however, the limitations placed upon our jurisdiction by the

Constitution do not permit us to entertain plaintiff's motion. Sections 3 and 4, Article V, Constitution of Missouri, V.A.M.S.

The motion is ordered stricken and the judgment is affirmed.

All concur.