**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Appellant,**

v.

**NORTHEAST BUILDING COMPANY et al., Defendants,**

**Albert E. Carlson and Marie A. L. Carlson, Respondents.**

No. 52303.

Supreme Court of Missouri, Division No. 2.

Dec. 11, 1967.

Robert L. Hyder, Jefferson City, Earl H. Schrader, Jr., Charles J. Brennan, Kansas City, for appellant.

Ralph H. Duggins, Jefferson City, for respondents.

STORCKMAN, Judge.

This is an action brought by the State Highway Commission to condemn for highway purposes certain improved real estate located in Jackson County, Missouri. The tract with which we are concerned was owned by Albert E. Carlson and Marie A. L. Carlson. These defendants and the Highway Commission both filed exceptions to the $64,000 award of the Commissioners. The trial of the issue of damages resulted in a jury verdict for defendants in the sum of $55,000. The defendants' motion for a new trial was sustained on the ground that the trial court had erroneously excluded evidence offered by the defendants as to the value of certain machinery and fixtures in the buildings. The Highway Commission has appealed and seeks to have the judgment reversed and the cause remanded with directions to reinstate the verdict of the jury. The sole issue on appeal is whether the trial court erred in granting a new trial because of its exclusion of this evidence.

The property in question, located in the northwest quadrant of the intersection of Independence Avenue and Cherry Street in Kansas City, was appropriated in its entirety. The land area of the tract was in excess of 21,000 square feet. On it were three principal buildings so connected that a person could go from one to another without going outside. The property was purchased sometime in the 1930's and was used for a laundry and cleaning business

until about two years before the property was condemned on September 6, 1955. The building on the corner was three stories in height; the one adjoining it on the west was two stories. The third main building ran north from the second building and was also two stories in height. Construction records were not available, but the buildings were estimated to be fifty years old or more. There was a building on the north part of the premises known as the engine or boiler room which housed boilers and other machinery. Also on the north side were two garages and an area for parking automobiles. On the eastern side of the building running north there was a loading dock. The buildings had been braced and strengthened to make them suitable for conducting a laundry business and supporting heavy machinery. Immediately prior to the taking, a portion of the corner building was used by the owners as a pickup and delivery station for laundry which was taken out and serviced elsewhere. A neon sign company and Roberts Sales Company were tenants in other portions of the premises. There was evidence that the premises were suitable for certain kinds of warehousing and storage and had been used for that purpose to a limited extent.

For the landowners, Mr. Charles J. Schmelzer testified that the fair market value of the land and improvements was $85,000; he did not include boilers and other fixtures attached to the building in his appraisal. Mr. Carlson, as one of the owners, testified the total value of the property taken including fixtures was $95,000. On the other hand, Mr. Tom Vanderpool testified for the Highway Commission that the fair market value of the land and improvements was $46,000 and Mr. Sewall W. Mudge put the value at $49,880. The plaintiff's experts put no value on the engine room machinery. The critical question on this appeal is whether the trial court was justified in granting a new trial by reason of its refusal to permit defendants' expert witness to testify regarding the value of boilers and other fixtures in the engine room.

Mr. Maurice V. Viets, a registered mechanical engineer, had been a consulting engineer for twenty-seven years. He had been engaged in appraising mechanical equipment and power plants; no objection was made as to his qualifications. He described the mechanical equipment found in defendants' engine and boiler room and stated that he had appraised the value of these items by deducting the observed depreciation from their replacement cost which gave him the remaining live value. When the witness was asked the cost of one of the boilers described, plaintiff's counsel asked and was granted permission to "ask a few preliminary questions of the witness" and the following occurred:

"Q  (By Mr. Brennan) Mr. Viets, as I understand what you have done, you have made an appraisal of certain machinery.

A  That's right.

"Q  Have you made any appraisal of anything besides that in connection with this property?

A  No, sir.

MR. BRENNAN: Based upon the the witness's response, Your Honor, I move to—I object to the question put by counsel on the basis that no complete appraisal was made by the the witness in connection with the fair market value.

THE COURT: The objection is sustained."

The witness' testimony was terminated at this point and he was excused.

The next witness was one of the owners, Albert E. Carlson, who testified that the property was located in a M–1 zone for light manufacturing. He testified as Mr. Schmelzer had that some of the machinery and fixtures were attached to the premises and not removable, meaning that they could

not be removed without damage to the building or the equipment. The boilers, water heaters, water softeners, water tanks, the pumps and the old engine and all that goes to make up a power plant in a laundry were in that classification. Mr. Carlson was permitted to give an opinion as to the value of the property with the fixtures and equipment in place, which value he fixed at a little better than $95,000.

One of the plaintiff's expert witnesses, Mr. Vanderpool, testified that the old boilers, hot water heaters and water softeners did not contribute to the value of the property and that he did not consider them at all. The other expert, Mr. Mudge, did not state whether he put any value on these fixtures.

The appellant's position on appeal in some respects is not consistent with that taken in the trial court. Appellant's brief asserts in its first point that (a) the defendants wholly failed to make an offer of proof respecting the value of the machinery, (b) the trial court allowed defendants ample opportunity to adduce evidence of the value of the machinery and such evidence was adduced when owner Carlson testified, and (c) that witness Viets's testimony as to the separate value was properly excluded "in that said witness was unable to lay a foundation to justify such separate valuation and since there were very substantial issues still pending as to whether said machinery was so affixed to the building as to be part of the realty appropriated, and as to whether such machinery enhanced the value of the property as a whole." The second point is somewhat similar but proceeds on the theory of waiver. It asserts that if any such error occurred it is "solely chargeable to defendants themselves on account of their own conduct" in that (a) they "failed to make offer of proof" and (b) they made no effort to produce evidence of the separate value of such machinery "after a foundation for admission of the same had been received". As we will later demonstrate the objection that a proper foundation had not been laid was not interposed in the trial

court. In support of its contention that an offer of proof must be made when evidence is rejected and that a failure to do so precludes review of the action of the trial court, the plaintiff cites Keeshan v. Embassy Investment Company, Mo.App., 303 S.W.2d 666, and Pitha v. St. Louis Public Service Company, Mo., 273 S.W.2d 176.

■ The purpose of the requirement that certain formalities and rules be observed with respect to offers of proof is to to make certain that the trial court and opposing counsel understand what evidence is being offered and its relevancy and materiality. Stipp v. Tsutomi Karasawa, Mo., 318 S.W.2d 172, 175 [5]. It follows that the reason for a formal offer of proof does not exist if the trial court and counsel by other means are sufficiently advised as to what the testimony of the witness will probably be if he is allowed to testify. Merk v. St. Louis Public Service Company, Mo., 299 S.W.2d 446, 449–450 [3, 4]; Wahl v. Cunningham, 320 Mo. 57, 6 S.W.2d 576, 586–587 [9], 67 A.L.R. 489. See also State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, 310 [4, 5].

■ As heretofore noted, the plaintiff ascertained by its questions that the witness Veits had appraised no part of the property other than the boilers and similar machinery. Counsel's objection then was that "no complete appraisal was made by the witness in connection with the fair market value." The plaintiff's theory of exclusion is further disclosed by objections previously made during the testimony of defendants' real estate expert. Defendants' counsel had asked Mr. Schmelzer to tell how he arrived at the valuation of the various buildings. The plaintiff objected on the ground that the witness was being asked "to give the values piece-meal". The objection was sustained and the witness was then asked how he arrived at the valuation of building No. 1. Objection was made "for the same reason" which was also sustained. The witness was then asked the general question as to what value he placed on the improvements

on the property to which the objection was again made by the plaintiff that "we are going into this thing piece-meal". The court called counsel to the bench and stated "you are going to have to arrive at an overall value first". The court then asked counsel for the plaintiff if that was the substance of his objection and counsel replied in the affirmative. On the entire record it is evident that plaintiff's theory was that the evidence was incompetent because it related to the fixtures alone and did not cover the entire property, the land and improvements. It also appears that the trial court and counsel fully understood that the objection went to a category of evidence being offered. In these circumstances it was not necessary for the defendants to make a formal offer of proof in order to render the ruling eligible for review by the trial and appellate courts.

■ The defendants were not required to recall their expert on the value of fixtures at a later time and re-offer the testimony because there was no apparent change during the trial in the court's view of the theory on which the evidence was rejected. The testimony of Mr. Carlson was in conformity with the concept of valuation as an entirety. As an owner he was qualified to give an opinion as to the value of his property although he was not a real estate expert. Shelby County R–IV School District v. Herman, Mo., 392 S.W.2d 609, 613 [7].

■ On appeal the plaintiff undertakes to transform or present another ground for its objection to the testimony of Mr. Viets. The plaintiff now asserts that a proper foundation had not been laid for this sort of evidence because there was no proof that the machinery was a part of the realty until Mr. Carlson testified. The only objections to evidence that can be considered on appeal are those that are made in the trial court. Mitchell v. Robinson, Mo., 360 S.W.2d 673, 676 [1]; Hall v. Clark, Mo., 298 S.W.2d 344, 350 [14]; Span v. Jackson, Walker Coal & Mining Co., 322 Mo. 158, 16 S.W.2d 190, 200 [20]. This is an entirely

different objection and since it was not put forward at the trial it cannot be considered now.

Moreover, the plaintiff has not taken into consideration evidence appearing previously in the transcript. From Mr. Viets's description of the machinery in the engine room, it might be inferred that the boilers and similar machinery were fixtures. Mr. Schmelzer, the defendants' real estate expert, described the boilers and other machinery in the engine room and stated that they were attached to the building according to his best recollection. It is not clear from the record whether Mr. Schmelzer failed to give this particular property a value because he thought it was worthless or whether he refrained from doing so because he did not consider himself an expert as to the value of this special kind of fixtures.

The plaintiff places considerable reliance on State ex rel. State Highway Commission v. Dockery, Mo., 300 S.W.2d 444. This case, however, supports the order granting a new trial rather than plaintiff's contentions. We are referred to Dockery primarily to support the proposition that machinery and equipment installed in and permanently attached to a factory building become a part of the realty and an element of damages in a condemnation action to the extent they enhance the value of the property as a whole. In further definition of its present position the plaintiff asserts in written argument that the attempt to adduce evidence of the separate value of the machinery and fixtures "was improper because at the time no foundation had been laid to justify admission of the same." The transcript discloses, however, that no such issue was raised or ruled in the trial court and, hence, cannot be entertained here.

In the Dockery case a paint manufacturing plant was condemned and the State Highway Commission appealed from the award primarily on the ground that the trial court erred in permitting defendant's witnesses to estimate the damages by totalling separate estimates of the value of the land,

the value of the factory building and the value of the machinery and equipment installed in the factory. 300 S.W.2d at page 446. This court denied the contention especially since "the elements" were taken in relation to one another which is another way of estimating the total damage. 300 S.W.2d at page 451. The feasibility and sometimes the necessity of separating these elements is demonstrated by the expert evidence adduced by the Highway Commission in the Dockery case. Witness Garton disclaimed any expert knowledge as to the value of the paint manufacturing machinery but as a real estate expert valued the improvements and the land separately and totalled them. Witness Brooks, a qualified appraiser of machinery, testified only to the value of the major items of the machinery and aggregated them. Witness Stiel, a building contractor, testified only to the depreciated value of the building. Witness Schneider, an expert appraiser of real estate, testified to the value of the land and improvements exclusive of the machinery because he had no expert knowledge of that item of property. Thus the two expert real estate appraisers did not value the paint making equipment because their expertise did not extend to this special kind of machinery. There are bound to be situations where value of the various elements of damages going to make the whole must be obtained from different sources. See also In re Armory Site in Kansas City, Mo., 282 S.W.2d 464, 471–472 [16], and State ex rel. State Highway Commission v. Pope, 228 Mo.App. 888, 74 S.W.2d 265, 268 [6, 7].

The appellant's final contention is that the court erred in granting a new trial because Mr. Carlson and all of the defendants' witnesses did consider, or should be presumed to have considered the value, if any, of such machinery as a part of the realty. The transcript of the evidence does not support the plaintiff in this regard. The only authority cited holds an assignment insufficient because it did not name the witness whose testimony was challenged. Mr. Viets was the only witness purporting to

be an expert appraiser of this kind of property and the assignment of error in the motion for new trial gave all the information needed. The contention is denied.

 Appellate courts are more liberal in upholding the trial court's action granting a new trial than in reversing and remanding a judgment on the same grounds. Mochar Sales Co. v. Meyer, Mo., 373 S.W.2d 911, 916 [10], and cases therein cited. We have considered all of the appellant's contentions and find them to be without merit.

Accordingly, the order granting a new trial is affirmed and the cause remanded.

All of the Judges concur.