**Hattie MERK, Appellant,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
**a Corporation, Respondent.**

**No. 45181.**

Supreme Court of Missouri,

Division No. 1.

March 11, 1957.

Lusser & Dorsey, Rene J. Lusser, Gerard M. Dorsey, St. Louis, for appellant.

Lester F. Stephens, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for respondent.

COIL, Commissioner.

The trial of appellant's action for $35,000 damages for personal injuries resulted in a jury verdict for respondent, hereinafter called defendant. It is appellant's contention, inter alia, on this appeal from the ensuing judgment that the trial court committed reversible error in excluding evidence. We are of the view, for the reasons to be stated, that plaintiff's contention is correct and that the case must be reversed and remanded.

A summary statement of the facts will suffice. About 7 a. m. on November 5, 1953, a collision occurred between the northbound automobile, in which appellant, hereinafter called plaintiff, was a passenger, and a southwestbound bus, owned and operated by defendant, in the intersection of north-south Tower Grove Avenue and northeast-southwest Vandeventer Avenue in St. Louis. Tower Grove south of Vandeventer was 50 feet wide and contained six traffic lanes. North of Vandeventer it was 36 feet wide and contained four traffic lanes. Vandeventer, both east and west of Tower Grove, was 42 feet wide and contained four traffic lanes. There were major street stop signs at all four corners of the intersection.

All of plaintiff's evidence as to the manner in which the accident occurred supported plaintiff's evidentiary trial theory, to this effect: that she and four other persons were passengers in an automobile being driven by one O'Shea; that his automobile was traveling northwardly on Tower Grove in the innermost northbound traffic lane; that the driver made the boulevard stop for Vandeventer; that before he started forward he observed defendant's westbound bus about 100 feet east of the east curb line of Tower Grove, traveling in the northernmost traffic lane at 10–15 miles per hour; that he proceeded slowly into the intersection in the same innermost traffic lane and when the front of his car reached the center line of Vandeventer, defendant's bus was 50 to 75 feet east of Tower Grove, traveling 10–15 m. p. h. in the northernmost lane of Vandeventer, with its right side about one foot from Vandeventer's north curb; that O'Shea then accelerated his speed to 8–10 m. p. h. and, when all but the rear six feet of his automobile had cleared the intersection and passed beyond the north curb of Vandeventer, the right front of the bus, which had proceeded directly forward without making the required stop, without sounding a warning, and without swerving, struck the right rear wheel and fender of O'Shea's automobile, turning it onto its left side and some part thereof came into contact with a Mrs. Lanigan's automobile which had been proceeding south on Tower Grove in the westernmost traffic lane and which had stopped at the north curb line of Vendeventer.

Defendant's version of the manner in which the accident occurred, supported by substantial evidence, was this: that the bus came to a stop at a place about 10 feet east of the east curb of Tower Grove and thereafter proceeded slowly forward (1 to 3 m. p. h.) toward or perhaps into the intersection; that at the time the bus started forward from its stopped position, there were' three vehicles occupying respectively the three northbound traffic lanes on Tower Grove and which automobiles were stopped at or near the south curb of Vandeventer; that as the bus moved into the intersection, two of those northbound automobiles started forward and had traveled about 12 feet into the intersection when both of them stopped and one of their drivers motioned for the bus to proceed in front of them; that the bus driver continued slowly forward, looked to his right for southbound traffic and observed that Mrs. Lanigan's southbound automobile had come to a stop at the north curb of Vandeventer; that, in the meantime, the O'Shea automobile, in which plaintiff was a passenger, proceeding north on Tower Grove, swerved to the west around the westernmost stopped automobile, into the west or southbound portion of Tower Grove at a speed of 25 m. p. h., and, thereafter, its speed increased to 40 m. p. h. as it continued across the intersection; that, apparently to avoid striking the Lanigan automobile, it swerved to the right from the west side of Tower Grove into the right front corner of defendant's bus, which, in the meantime, had been brought to a stop at or east of the center line of Tower Grove.

Mrs. Lanigan was defendant's witness. Subsequent to the accident she had moved to California. Her deposition had been taken in California by the defendant. She, nevertheless, was flown to St. Louis at defendant's expense to appear as a witness at the instant trial. The transcript of the record reflects the following during her cross-examination:

"By Mr. Lusser [plaintiff's attorney]: Q. Your car was damaged to the extent of $218.00?

"Mr. Stephens: I am going to object to it, Your Honor. I would like to make a record on it. (Out of the hearing of the jury.)

"Mr. Stephens: I am going to object to the question, for the reason it is irrelevant and immaterial as to the extent of the damage to her car. *He is leading up to whether or not we paid her $200.00 for the damage to her car. As a matter of fact, we did. It has nothing to do with the issues in this case;* doesn't show negligence on our part, that we were negligent in this case. It would prejudice our case if brought in, and it is certainly irrelevant and immaterial, and wouldn't shed light on the issues in this case.

"The Court: Sustained.

"Mr. Lusser: At this time, if the Court please, I have asked the witness if her car was damaged to the extent of some $218.00. She has so testified in the deposition. On page 37 of the depositions taken of this lady she testified that the automobile which she was driving on the occasion, and which was struck by the O'Shea car after the O'Shea car had been struck by the bus, was damaged to the extent of $210.00; that the glass on the left side of her car was damaged. *We propose to show that the damages to her car were paid by the St. Louis Public Service Company. The reason for the question is to show the interest of this witness in the outcome of this litigation, and that it may affect her credibility as a witness.*

"The Court: Sustained. (Within the hearing of the jury.)

"Q. Mrs. Lanigan, what parts of your car were damaged? A. The

driver's side, the left side of the car; the windshield was broken, and all the glass on the side was broken; and lots of dents.

"Q. And I assume that the St. Louis—

"Mr. Stephens: I don't know what he assumes, Your Honor—

"Q. —the St. Louis Public Service Company did take your deposition— (Out of the hearing of the jury.)

"Mr. Stephens: If he asks the question concerning *the other ruling*, I am going to request a mistrial. Once it is asked it is out of the bag.

"Mr. Lusser: He doesn't know what I am going to ask.

"The Court: Overruled." (Italics ours.)

■ Defendant does not dispute that plaintiff was entitled to show on cross-examination of the witness Lanigan any fact which properly might affect her credibility as a witness. Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 451, 189 S.W.2d 568, 575 [19, 20], 161 A.L.R. 383; Gurley v. St. Louis Transit Co., Mo. App., 259 S.W. 895, 898 [5-7]; Houfburg v. Kansas City Stock Yards Co. of Maine, Mo., 283 S.W.2d 539, 548 [18-24]. And defendant does not seriously dispute the proposition that the fact that Mrs. Lanigan was paid $200 by defendant for damage to her automobile suffered as a result of the accident in question was a fact which might have affected her credibility and have influenced the jury in determining the weight to be given her testimony. Defendant does suggest that the scope and extent of cross-examination, particularly as to collateral matters, are largely within the discretion of the trial court. But that contention is inapposite here if the trial court denied the cross-examiner the right to initially disclose a matter affecting the witness's credibility. The trial court may, in its discre-

tion, control the scope and extent of cross-examination but he has no discretion to prevent any cross-examination at all on a proper subject. State v. Thompson, Mo., 280 S.W.2d 838, 841 [6].

Defendant's real position is that the trial court did not err in its ruling because plaintiff's counsel was not in fact denied the right "to show by the witness that defendant had paid her money in settlement of her claim." In that connection, defendant argues that an answer to the question, "Your car was damaged to the extent of $218.00?" would have been irrelevant and immaterial, and that that was the only question to which the court sustained an objection; that plaintiff's counsel did not make an offer to prove by the witness that defendant had paid her $200 for the damage done to her automobile; and that, therefore, plaintiff's counsel was not *"prevented* from developing *by proper questions* the fact that the witness settled her case with the defendant."

■ In our view, the portion of the record set forth above (the only part of the record relating to the present question) clearly demonstrates both that the trial court erred in the ruling and that plaintiff's counsel was thereby effectively denied the right to show by the witness that she had been paid $200 by defendant in compensation for the damage sustained to her automobile. It is true, as defendant contends, that the original question, "Your car was damaged to the extent of $218.00?" (while perhaps relevant and material, contrary to defendant's stated objection, on the question of the violence of the collision) did not include in it or call for an answer to the question of whether defendant paid the witness $200 because of her automobile damage. But it is clear to us that the court and both counsel fully understood that the matter being discussed at the bench and ruled by the court concerned the right of plaintiff's counsel to ask and have answered the question whether defendant paid the witness's property damage. That

such was the situation is demonstrated by the language used by both counsel. Defendant's counsel said: "He [referring to plaintiff's counsel] *is leading up to whether or not we paid her $200.00 for the damage to her car. As a matter of fact, we did.* It has nothing to do with the issues in this case; * * *." The court then sustained the objection theretofore made. Even at that point the sustention of the objection would not necessarily be construed as covering only the prior question, but, more reasonably, would be construed as covering the question which defendant's counsel said was going to be asked. Thereafter, plaintiff's counsel pointed out specifically that he proposed to show that the damages to the witness's car were paid by defendant and that "The reason for *the question* is to show the interest of this witness in the outcome of this litigation, and that it may affect her credibility as a witness." (Italics ours.) Again the court said "Sustained." Certainly, irrespective of the effect of the prior ruling, it seems obvious that the last ruling was directed to the right of plaintiff's counsel to ask the proposed question. To demonstrate that defendant's counsel clearly understood that such was what the court meant, there is the further above-quoted portion of the record in which, when defendant's counsel thought that plaintiff's counsel was again going to ask the question whether defendant paid the witness's damage, he interposed and said: "If he [referring to plaintiff's counsel] asks the question concerning the *other ruling*, I am going to request a mistrial. Once it is asked it is out of the bag." (Italics ours.) Certainly it is apparent that defendant's counsel's reference to the "other ruling" could have meant only a ruling as to the right of plaintiff's counsel to ask the question whether defendant had paid Mrs. Lanigan's property damage resulting from the accident in question.

Under those circumstances, it is unimportant whether the language used by plaintiff's counsel constituted a formal offer of proof, or whether there was an objection to the proffer thereafter sustained. The important thing is that the trial court knew that the matter he was ruling was plaintiff's right to ask the question about defendant's payment of witness's damage and knew what the answer would be, because defendant's counsel admitted during the colloquy the payment by defendant to Mrs. Lanigan of $200 for property damage. The real purpose and function of an offer of proof is to apprise the trial court of what would be forthcoming were an answer to a certain question permitted. The reason for a formal offer of proof vanishes if the trial court is, by some effective procedure, sufficiently advised of what the answer will be and of its relevancy. In Donnelly v. Goforth, Mo., 284 S.W.2d 462, 465, this court, in holding that nothing was there preserved for review because of the failure of the record to show that the trial court had been sufficiently advised, said: "plaintiff did not make any offer of proof; * * * *nor did plaintiff in any other manner* advise the trial court of what the answer would be and of its bearing on the issues of the case so that the trial court could determine the question of its competency and materiality." (Italics, present writer's.) In the instant case, the trial court was sufficiently advised of what the answer would be and of the reason for its admissibility.

For the reasons stated, we hold that the trial court erred in denying plaintiff the right to ask and have answered (under proper limitations as to the purpose for which such testimony was admissible) the question whether defendant paid the witness for property damage she sustained as a result of the collision in question. It remains to determine whether the error was sufficiently prejudicial to constitute reversible error. Under the provisions of Section 512.160, subd. 2 RSMo 1949, V.A.M.S., we may not reverse a judgment unless the error materially affected the merits of the action.

As our summary statement of the facts discloses, the issues for the jury as to the manner in which the accident occurred were sharply drawn. While in most personal injury cases the credibility of witnesses is involved, it would be difficult to hypothesize a case in which the jury's decision as to the facts was more dependent upon the credibility of plaintiff's witnesses on the one hand and defendant's on the other, than instant case. If plaintiff and her witnesses gave a true account of what took place, plaintiff would almost certainly recover. Contrariwise, if defendant's witnesses had accurately stated the facts, a defendant's verdict would be most likely. Probably the most important question for the triers of fact to determine, in deciding whether plaintiff's or defendant's version was essentially correct, was whether the driver of the automobile in which plaintiff was a passenger did or did not attempt to go through the intersection on the wrong side (the southbound portion of Tower Grove) thereof at a relatively high rate of speed. There were three defendant's witnesses whose testimony supported that version—the bus driver, a bus passenger, and Mrs. Lanigan. It is apparent, therefore, that the jury was not dependent solely upon Mrs. Lanigan's testimony to find that issue for defendant. But it is equally true that Mrs. Lanigan, presumably, for all that was shown, not interested in the outcome of the case and in a good position to observe, was one of three witnesses on that issue. She was, therefore, an important witness on an obviously crucial fact issue. It would be futile to attempt to speculate on which defendant's witness or witnesses the jury relied, or whether that issue was resolved for defendant because of the combined and cumulative effect of the testimony of all three of those witnesses. Under such circumstances, anything which affected the credibility of any of those three was highly important from plaintiff's standpoint.

We have not overlooked the fact that it was shown that Mrs. Lanigan was brought from California at defendant's expense and that, conjecturally, the jury may or may not have known that she must have voluntarily appeared as a witness. It is also true that the extent (in the sense of the portions damaged) of the damage to Mrs. Lanigan's automobile was in evidence. It is also true that Mrs. Lanigan was impeached to some extent by her prior statement and by her deposition. But it does not appear that the fact that she was paid by defendant for the damage to her automobile was in evidence by direct testimony or necessary inference from other evidence.

Under all those circumstances, and in view of the fact that plaintiff had the right to disclose to the jury that defendant paid Mrs. Lanigan, in an attempt to affect her credibility and thus permit an inference of her interest or bias, we must conclude that the trial court's erroneous exclusion of that testimony may have affected the merits of the action.

Plaintiff also urges error in the admission of evidence and in connection with defendant's counsel's jury argument. We need not rule those matters because their recurrence is unlikely. Plaintiff also claims that three of the instructions given at defendant's request were erroneous. Defendant contends that the question of the erroneousness of those instructions is not preserved for appellate review. We need not rule that question or whether the instructions were prejudicially erroneous. Defendant may choose, in the event of another trial, to redraft its instructions in the light of plaintiff's attacks thereon.

The judgment is reversed and the case remanded.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.