Carol L. KUMMER, et al.,
Plaintiffs–Appellants,

v.

Eligio C. CRUZ, et al.,
Defendants–Respondents.

No. 52593.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1988.

Application to Transfer Denied
July 26, 1988.

Dowd & Dowd, P.C., Edward L. Dowd, Jr., St. Louis, for plaintiffs-appellants.

Kortenhof & Ely, Ben Ely, Jr., St. Louis, for defendants-respondents.

SIMON, Presiding Judge.

This appeal arises out of a medical malpractice action instituted by plaintiffs, Carol L. Kummer, and her husband, Robert Kummer, against defendants, Dr. Eligio C. Cruz and Associated Obstetrics and Gynecology, Inc. The gravamen of plaintiffs' first amended petition averred that Carol Kummer sustained injuries and damages as a result of a midline episiotomy performed during childbirth by defendant, Dr. Eligio C. Cruz, during which Dr. Cruz negligently cut the anal sphincter muscles of Carol Kummer and, thereafter, negligently failed to recognize the damage done by the episiotomy and birth and to suture the sphincter muscles properly. The defendants joined issue as to the cause of Mrs. Kummer's injury on two alternate theories. Defendants' first theory is that Mrs. Kummer's episiotomy had become infected, that the injury to the sphincter muscle was due to the infection, that infection is simply a normal risk in this type of operation, and that Dr. Cruz did not cause any injury. Defendants' second theory was that the sphincter muscle was cut during subsequent surgery performed by Dr. Francis Burns.

The jury in the Circuit Court of the County of St. Louis returned its verdict in favor of defendants and judgment was entered thereon. On appeal, plaintiffs assert that the trial court erred: (1) in sustaining defendants' objections to plaintiffs' questions to their witness, Dr. Francis Burns, the subsequent treating physician, as to the cause of Mrs. Kummer's injury; and (2) in refusing to permit plaintiffs to cross-examine Dr. Burns, regarding his previous statements and records that directly contradicted his testimony at trial. We reverse and remand.

On March 24, 1981, Carol Kummer gave birth to her second child while under the care of defendants, Dr. Eligio C. Cruz and Associated Obstetrics and Gynecology, Inc. During the delivery, Dr. Cruz performed a midline episiotomy. A midline episiotomy is a surgical incision of the vulva running from the opening of the vagina towards the anus. The purpose of an episiotomy is to

prevent an uncontrolled laceration or tearing of the opening of the vagina during the delivery of the child.

Mrs. Kummer was discharged from the hospital on March 28, 1981. Approximately six weeks later, on May 9, 1981, Mrs. Kummer went to see Dr. Cruz for a standard post delivery checkup. Dr. Cruz testified that Mrs. Kummer made no complaints at that time.

Mrs. Kummer testified that after she went home from the hospital, she continued to bleed and had some swelling and discomfort. She testified that she told Dr. Cruz about the bleeding during the May 9, 1981 checkup and that Dr. Cruz told her that she was still healing and not to worry about it.

In June of 1981, Mrs. Kummer's condition grew worse. She began noticing a foul smelling discharge, accompanied by burning and itching, in the vaginal area. Mrs. Kummer returned to see Dr. Cruz on August 15, 1981. At this time she informed Dr. Cruz that she had been passing stool in the vaginal area since mid-July 1981. Dr. Cruz diagnosed a rectal-perineum fistula (an abnormal passage through the tissues between the rectum and the perineum through which feces matter was being passed). Dr. Cruz recommended surgery to correct the problem, and referred Mrs. Kummer to Dr. LaBlanc, a proctologist. Whether Mrs. Kummer ever saw Dr. LaBlanc does not appear in the record.

On August 24, 1981, five months after the delivery of her second child, and nine days after her last visit to Dr. Cruz, Mrs. Kummer went to see Dr. Francis Burns, upon referral by Dr. Al Denk. Dr. Burns testified that he was a friend of Dr. Cruz and Dr. Cruz testified that he played golf regularly with Dr. Burns.

Dr. Burns testified that he examined the records of Mrs. Kummer's medical history, spoke with Mrs. Kummer about her problem, and performed a physical examination on Mrs. Kummer. Dr. Burns testified, without objection, that Mrs. Kummer complained of difficulty in controlling bowel movements and of an extraordinary amount of flatulence, when she saw him on August 24, 1981. She complained that the condition had existed approximately five months, referring to the birth of her second child and the episiotomy. Dr. Burns testified that he made a visual examination of the area and also performed an anoscopic examination. Using a probe, Dr. Burns determined that Mrs. Kummer had a rectal-vaginal fistula (an abnormal passage through the tissues between the rectum and vagina) and that "there was an obvious separation of the sphincter muscle."

Dr. Burns performed two surgeries on Mrs. Kummer in an attempt to correct her condition. He performed a fistulotomy on September 30, 1981, to repair the fistula, and he performed an anoplasty on October 19, 1981, removing scar tissue from the sphincter muscle which had been divided and bringing the tissues together with heavy suture material. As a part of the operation, Dr. Burns disected tissue on a major portion of the vagina and built up the perineal body. Dr. Burns testified that Mrs. Kummer's sphincter muscle was lacerated before he saw her and that she had suffered a third degree laceration of that muscle. During direct examination, plaintiffs' counsel attempted to elicit testimony from Dr. Burns that the laceration of Mrs. Kummer's sphincter muscle was caused by the episiotomy. All of defendants' objections to such testimony were sustained. Plaintiffs made no formal offer of proof. Plaintiffs then framed a hypothetical question as to the cause of the lacerated sphincter muscle. Defendants objected on foundational grounds and no answer was given. However, the trial court did not rule on the objection. On cross-examination, Dr. Burns testified that the laceration of the sphincter muscle could have resulted from infection. Based on this testimony plaintiffs' counsel sought leave to reexamine and then to cross-examine Dr. Burns in an attempt to impeach him with his previous statements and records indicating that the sphincter muscle was lacerated at birth. Leave was denied by the trial court. Again, plaintiffs failed to make an offer of proof.

Mrs. Kummer had another child in January, 1985, which was delivered by caeserian

section by Dr. Herman Taute. Dr. Taute had initially seen Mrs. Kummer on July 16, 1982, at which time she did not complain to him of incontinence. He next saw her on June 27, 1984, at which time she was pregnant, and he continued to follow her through the pregnancy. Mrs. Kummer never complained of incontinence of her bowels to Dr. Taute during any of her prenatal visits.

Plaintiffs' expert witness, Dr. Marvin Krane, a board certified obstetrician/gynecologist from Philadelphia, Pennsylvania, testified, based on his review of the medical records in the case, that Mrs. Kummer had suffered a recto-vaginal fistula. Dr. Krane also testified that in his opinion Mrs. Kummer's sphincter muscle was lacerated at the time of the delivery of her second child by the mid-line episiotomy performed by Dr. Cruz and that he caused the fistula. Dr. Krane testified that Dr. Cruz's failure to identify and repair the laceration led to Mrs. Kummer's problems with the sphincter muscle. He testified that Mrs. Kummer will always have pain during sexual intercourse because of scar tissue and that Dr. Cruz's failure to identify and repair Mrs. Kummer's lacerated sphincter muscle caused the scarring. Dr. Krane testified on cross-examination that he had been employed by counsel for plaintiffs to examine the case, that he was being paid to testify, that he had testified for plaintiffs' counsel in another case, and that he had reviewed and testified in many malpractice cases.

Dr. Cruz testified that neither the episiotomy nor the delivery caused the laceration of the sphincter muscle and that after the birth, Mrs. Kummer did not have a laceration of the sphincter. Dr. Cruz testified that infection was the cause of the fistula.

Defendants' expert witness, Dr. Lee Rigg, testified, based on his review of the medical records in the case, that the episiotomy and delivery of March, 1981, were unrelated to the development of Mrs. Kummer's fistula. Dr. Rigg testified further that in his opinion Mrs. Kummer's sphincter muscle was intact before the fistulotomy performed by Dr. Burns and that the

sphincter muscle was in fact cut during that surgery performed by Dr. Burns.

In their first point, plaintiffs assert that the trial court erred in sustaining defendants' objections to questions put by plaintiffs to Dr. Burns concerning the cause of Mrs. Kummer's lacerated sphincter muscle. Plaintiffs allege error in two regards. First, plaintiffs claim that Dr. Burns was a "treating physician," and as such, should have been permitted to testify as to the cause of the lacerated sphincter muscle based upon facts within his knowledge and observation. Second, plaintiffs argue that even if Dr. Burns cannot be classified as a treating physician, Dr. Burns should have been permitted to answer a hypothetical question, containing necessary facts and plaintiffs' theory of the case, as to the cause of Mrs. Kummer's lacerated sphincter muscle.

Plaintiffs' allegations of error involve the following exchange at trial:

Q (By Plaintiffs' counsel): Doctor [Burns], you previously testified [Mrs. Kummer] suffered a third degree laceration at birth?

A Yes.

Q Of the sphincter muscle?

A Yes.

Q Now that laceration of the sphincter muscle, could you tell whether this caused, whether or not by infection or laceration of birth?

A Well, I was not there. Apparently it was a result of the episotomy [sic] which was repaired and probably became infected.

Defense Counsel: Excuse me, I move to strike, Your Honor, that portion where the doctors says "apparently." There's not sufficient medical certainty to give a proper opinion.

THE COURT: Sustained.

Q (Plaintiffs' Counsel): Doctor, was it your opinion within a degree of medical certainty that that laceration was a result of the episotomy [sic] at birth?

Defense Counsel: I object.—Immediately after the episotomy [sic] was performed.

THE COURT: Sustained.

THE WITNESS: My opinion—

THE COURT: The objection was sustained. You need not answer.

Q (Plaintiffs' Counsel): Doctor, let's go back to what I was trying to get at before. The laceration of the sphincter muscle which you described found, was that caused by infection?

A Most probably. I'm not following you.

Q I thought it was your testimony that the sphincter muscle was lacerated due to the episotomy [sic] extending—

A That most probably was the case.

(Defense Counsel): "most probably," again I object because of the lack of foundation, the condition Mrs. Kummer's, the area of the body in question immediately after the episotomy [sic] was performed, and I ask to strike the answer that came in before I had a chance to object. Again, it's based on probabilities, not a sufficient medical certainty.

(Plaintiffs' Counsel): He previously testified when he examined her on August 24, the same complaints, was a result of the episotomy [sic] at birth.

THE COURT: The objection is sustained and the answer stricken from the record and the jury is instructed to disregard it.

(Plaintiffs' Counsel): Doctor, you did testify, didn't you, that the sphincter was lacerated. Tell us what causes a lacerated sphincter?

A Well, in this case—

(Defense Counsel): Again, "in this case," particularly I object to the question because it doesn't—the question is too general, it doesn't hypothesize—I have no objection to the doctor answering specifically on this case, but obviously it is based on a foundation previously mentioned that hasn't been laid.

THE COURT: Sustained.

(Plaintiffs' Counsel): Tell us what generally causes a lacerated sphincter?

A In this particular instance, most probably child birth.

(Defense Counsel): Excuse me. Again I object to the doctor's answer as not responsive to counsel's question as to general causes.

THE COURT: Sustained.

*   *   *   *   *   *

(Plaintiffs' Counsel): Did you tell Mrs. Kummer the cause of her lacerated sphincter when you treated her on August 24, 1981?

(Defense Counsel): Again, I object to that on the additional basis it would be irrelevant what was said to somebody else at a particular time, and again on the basis he is attempting to get in an opinion without a proper foundation of the condition of the episotomy [sic].

(Plaintiffs' Counsel): It's my understanding the testimony of an expert witness is admissible. He was the treating physician and what he told the patient is admissible.

(Defense Counsel): What the patient told the doctor is admissible.

THE COURT: Objection sustained.

(Plaintiffs' Counsel): Doctor, assume that Carol Kummer on March 24, 1981 gave birth to a baby after a mid-line episotomy [sic] by Dr. Cruz and for a subsequent time continued to suffer bleeding after birth and complained to Dr. Cruz on May 9, 1981, that subsequent to that time she continued to have pain and discomfort and swelling in the vaginal peritoneal area, gradually losing control of the sphincter muscle until August 24th, when you saw her, and she was complaining of complete incontinence, and of liquid bowel movements, no solids, and also assume Dr. Cruz said there was no laceration; assume that when you saw her she was telling you she had these problems and you examined her and found a third degree laceration of the sphincter, in your opinion what was the cause of the lacerated sphincter?

(Defense Counsel): I object, based on lack of foundation, one, and examination by Dr. Cruz immediately after an episotomy [sic] and his finding, and I further object because it does not include the fact she did not explain any

incontinence until August 15th, 1981 to Dr. Cruz.

(Plaintiffs' Counsel): One thing that is not in evidence, she was having problems with incontinence before August 15, 1981. If he wants to cross-examine the doctor—

THE COURT: Excuse me. Wasn't there a complaint—

(Plaintiffs' Counsel): To Dr. Cruz, yes.

THE COURT: Yes. You said when you presented the question you wished to update by including certain additions.

(Plaintiffs' Counsel): I will re-state the question, doctor.

THE COURT: Re-state the question.

Q Tell us generally what normally causes a laceration of the sphincter in a woman?

A The most probable common cause is child birth.

Q What other causes?

A Well, a severe trauma, trauma is certain one cause, if a person inadvertently falls on a particular object and hits that particular part of the body that can cause laceration.

Q Doctor, bound together by scar tissue healing together—

THE COURT: The lower part, not the entire thing.

Q —rectum and vagina, do you have an opinion within a reasonable degree of medical certainty whether this person's condition is a permanent condition?

A It was a permanent condition.

■ We first address defendants' claim that plaintiffs failed to preserve the issue for review because they failed to make an offer of proof with respect to the excluded testimony. Defendants cite *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876 (Mo. banc 1985), in support of their claim. The *Frank* case recognizes an exception to the general rule requiring a specific and definite offer of proof in order to preserve for review, allegations of error with respect to excluded evidence. The case sets forth a three prong test that must be met in order to fall within the exception. "First, it requires a complete understanding, based on the record, of the excluded testimony. Second, the objection must be to a category of evidence rather than to specific testimony. Third, the record must reveal the evidence would have helped its proponent." *Id.* at 883–84[14, 15]. Defendants contend that because their objections were raised to specific testimony, and not to a catagory of evidence, the exception provides no assistance to plaintiffs and, therefore, the issue has not been preserved for review.

We need not rule on defendants' contention for *Frank* is distinguishable on its facts and is inapposite to the instant case. In *Frank*, the defendants' expert was asked a hypothetical question which was objected to on the ground that it assumed "facts into the future and therefore calls for the witness to speculate and would be an improper question because there could be no evidence as to what will be done in the future." *Id.* at 883. The objection was sustained. No answer was given and no offer of proof was made. The defendant appealed, claiming that the trial court's ruling was erroneous. In holding that the defendant had failed to preserve the claim for review and that the exception to the general rule requiring an offer of proof was inapplicable, our Supreme Court stated that "we would have to guess whether the content of the witness' answer would have been improper evidence." *Id.* at 884. The apparent reason for the holding was that no answer or hint of possible testimony was to be found in the record.

The instant case requires no such guess work. The import of the proffered testimony by Dr. Burns is easily discernible from the record. Indeed, Dr. Burns testified that Mrs. Kummer's lacerated sphinter muscle was "most probably" caused by the episiotomy.

An expert's view of possibility or probability is often helpful and proper. * * * Where there are other facts which tend to show an accident caused a certain condition, the assurance of an expert that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from

such facts. (Quoted in *Ketcham v. Thomas*, Mo., 283 S.W.2d 642, 649, from *Kimmie v. Terminal Railroad Association of St. Louis*, 334 Mo. 596, 66 S.W.2d 561, 565.)

*Gant v. Scott*, 419 S.W.2d 262, 265[1] (Mo. App.1967). Here, Dr. Krane's testimony provided the requisite other facts. Although Dr. Burns' testimony was stricken from the record, the problem encountered in *Frank* is not present because we are able to determine from the record whether Dr. Burns' testimony is proper evidence.

In the instant case, we think that the rule laid down in *Wahl v. Cunningham*, 320 Mo. 57, 6 S.W.2d 576 (Mo.1928) should control. There it was stated that "[w]here it is clearly evident, as it is here, what the testimony of the witness will probably be if he is allowed to testify, no formal offer of proof is necessary...." *Id.* 6 S.W.2d at 587[8–10]. This view finds support in Corpus Juris Secundum wherein it is stated:

> It is often held that an offer of evidence is not necessary, in order to preserve for review an objection to a ruling of exclusion of evidence, *where the purpose and purport of the testimony expected to be elicited are obvious*, or fairly apparent, as when the question asked clearly indicates the pertinency, materiality, and nature of the answer expected, *or the answer has been given and excluded*, or the question indicates that the answer to it would be favorable to the party seeking to introduce the testimony.

4 C.J.S., *Appeal and Error*, § 291, at 900 (1957) (emphasis added).

On the entire record it is evident that the trial court and counsel fully understood what the testimony of Dr. Burns would have been had his testimony been admitted. The reason for a formal offer of proof does not exist if the trial court and counsel are, by other means, sufficiently advised to what the testimony of the witness will probably be if he is allowed to testify. *State v. Northeast Building Company*, 421 S.W.2d 297, 300[1] (Mo.1967). We conclude that the error was preserved and proceed to the merits of plaintiffs' point.

We first address the issue of whether Dr. Burns should have been permitted to testify as to the cause of the laceration of Mrs. Kummer's sphincter muscle, as a treating physician, based upon his personal knowledge and observation. Defendants contend that their objections to questions posed to Dr. Burns regarding the cause of the laceration to plaintiffs' sphincter muscle were based on the fact that Dr. Burns himself did not deliver the child and was not present at the time the midline episiotomy was performed and as such there was a lack of foundation to said questions.

■ In *Harp v. Illinois Central Railroad, Company*, 370 S.W.2d 387 (Mo.1963), our Supreme Court stated:

> As an exception to the general rule that a witness may not express an opinion, an expert witness may do so when qualified as such and when the subject matter is not of such common knowledge to invade the province of the jury. There is no question but that proper opinion testimony as to causal connection is competent and can constitute substantial evidence. However, the expert's opinion must not be a mere guess or conjecture but must be based upon facts and adequate data, and the opinion must have in support of it reasons and facts supported by competent evidence which will give the opinion sufficient probative force to be substantial evidence.

*Id.* at 391[1–3]. (citations omitted). The opinion of a medical expert based upon examination and treatment is substantial evidence and its weight is for the jury. *Kimmie v. Terminal R.R. Ass'n of St. Louis*, 334 Mo. 596, 66 S.W.2d 561, 564[3–5] (1933). The medical expert may "testify and give his opinion either from facts within his own knowledge and observation or from hypothetical facts, or from the two combined." *DeDonato v. Wells*, 328 Mo. 448, 41 S.W.2d 184, 187[1–4] (Mo.1931). However, if the expert has personal knowledge, a hypothetical presentation is unnecessary. *Id.* The question of whether an experts opinion is based on sufficient fact and supported by substantial evidence is a question of law. *Id.* It is well settled that

the admission or exclusion of expert opinion testimony is a matter within the discretion of the trial court. *Butcher v. Main*, 426 S.W.2d 356, 359[3, 4] (Mo.1968).

Here, it is clear that Dr. Burns was a treating physician. He examined Mrs. Kummer, both visually and with medical instruments, for the sole purpose of treating her for her condition. He obtained his knowledge of her condition and the extent of her injury by examination and from medical history necessary for diagnosis and treatment. Both are proper basis for opinion testimony. *See Breeding v. Dodson Trailer Repair*, 679 S.W.2d 281, 284–85[2, 3] (Mo. banc 1984). Moreover, Dr. Burns did in fact perform corrective surgery on Mrs. Kummer. He was the only doctor to testify, besides Dr. Cruz, that examined, diagnosed, and ministered to her. We recognize that when an expert testifies from personal knowledge rather than in answer to hypothetical questions, "he must first be shown to have a personal knowledge of the facts sufficient to enable him to form an opinion." *Freeman v. Loyal Protective Ins. Co.*, 169 Mo.App. 383, 195 S.W. 545, 548[2] (1919). However, a medical expert need not be present at the time of an injury in order to render an opinion as to the cause of the injury based on personal knowledge. *See, e.g., Hamilton v. Standard Oil Co.*, 323 Mo. 531, 19 S.W.2d 679, 690–91 (1929); *Kinchlow v. Kansas City, K.V. & W. Ry. Co.*, 264 S.W. 416, 421 (Mo.1924); *Phares v. Century Electric Co.*, 131 S.W.2d 879, 883–84 (Mo. App.1939).

In the instant case it was permissible for Dr. Burns to testify as to his opinion of the cause of Mrs. Kummer's injury based on his examination and treatment.

It is enough to say that it was the element of causal connection and not of time which determined the competency of the doctor's testimony regarding his findings, so that mere lapse of time, while it might or might not have affected the weight of the testimony in question, could not alone have served to render the same incompetent. *Adams v. Carlo*, Mo. App., 101 S.W.2d 753.

*Phares v. Century Electric Co.*, 131 S.W. 2d 879, 885[9] (Mo.App.1939). *See Gallihue v. Autocar Co.*, 16 Pa.Super. 303, 82 A.2d 73, 74[2] (1951). The testimony of Dr. Burns should have been admitted and the failure to allow it was error.

There was no significant remoteness in Dr. Burns' testimony. His testimony was crucial to plaintiffs' case. The demonstrated friendship of Dr. Burns and Dr. Cruz could have affected the weight of the proffered testimony by Dr. Burns. *See Rogers v. St. Avit*, 60 S.W.2d 698, 699[1] (Mo.App. 1933). Furthermore, defendants' expert, Dr. Rigg, attributed the cause of the laceration of Mrs. Kummer's spinchter muscle to the surgery performed by Dr. Burns. Yet, Dr. Burns was prevented from presenting significant testimony bearing directly on the central issue in the case and which would have refuted Dr. Rigg's opinion.

Defendants claim that the testimony sought to be elicited from Dr. Burns was brought out by the testimony of plaintiffs' other expert witness, Dr. Marvin Krane, and was therefore merely cumulative.

While the testimony of Dr. Krane and the proffered testimony of Dr. Burns are substantially identical in substance, it cannot be said that Dr. Krane's testimony is merely cumulative. Evidence should not be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the decision of which turns on the weight of the evidence introduced by the respective parties. *Grath v. Mound City Roofing Tile Co.*, 121 Mo.App. 245, 98 S.W. 812, 813[4] (1907); *Welp v. Bogy*, 218 Mo.App. 414, 277 S.W. 600, 604–05[8] (1925); *Tryon v. Casey*, 416 S.W.2d 252, 259[9–11] (Mo.App. 1967); *See Capra v. Phillips Investment Co.*, 302 S.W.2d 924, 936–37[17] (Mo. banc 1957); *Dorn v. St. Louis Public Service Co.*, 250 S.W.2d 859, 865–66[4, 5] (Mo.App. 1952). Here, the proffered testimony of Dr. Burns bears directly on the central issue of the case, i.e., the cause of Mrs. Kummer's injury. This issue controlled the verdict and by its nature turned on the

weight of the evidence introduced by the respective parties. Under these circumstances it cannot be regarded as merely cumulative.

▪ Nevertheless, defendants claim that a careful examination of the record reveals that Dr. Burns, without objection, attributed the laceration of Mrs. Kummer's sphincter to the episiotomy performed by Dr. Cruz. Defendants' point to the following exchange:

Q (Plaintiffs' counsel): Doctor [Burns], you previously testified [Mrs. Kummer] suffered a third degree laceration at birth?

A Yes.

Q Of the sphincter muscle?

A Yes.

Relying on the general rule that the exclusion of evidence is harmless where the record shows that it was ultimately admitted, *Imbler v. Wooledge*, 391 S.W.2d 920 (Mo.1965), defendants argue that any error by the trial court in excluding the evidence is harmless. We do not agree. Dr. Burns' answer is at best equivocal. It does not attribute the cause of the laceration to the episiotomy performed by Dr. Cruz, but merely indicates that the sphincter muscle was somehow lacerated during birth.

▪ We now address plaintiffs' claim that Dr. Burns should have been permitted to answer a hypothetical question asking him to give the cause of Mrs. Kummer's lacerated sphincter. Of course, it is proper for a medical expert to testify and give his opinion based on a hypothetical question which is sufficient in form and supported by facts. *DeDonato v. Wells*, 41 S.W.2d 184, 187 (Mo.1931). In the instant case, however, the trial court never ruled on defendants' objection. The record shows that plaintiffs' counsel said he would restate the hypothetical question, and then, in fact, went on to ask other questions. Having made no ruling on defendants' objection, the trial court cannot now be convicted of error. *See Oertel v. John D. Streett & Company*, 285 S.W.2d 87, 99[12] (Mo.App.1955).

▪ Plaintiffs argue that the transcript is obviously incorrect and that the trial court ordered counsel for plaintiffs to "restate the question," prior to plaintiffs' counsel stating, "I will restate the question, doctor." We recognize that the transcript is of an unusually poor quality, replete with misspellings, and lack of an index. However, we must take the transcript as we find it. A transcript, duly approved, as here, is presumed to be correct. *Fine v. Waldman Mercantile Company*, 412 S.W.2d 549, 552 (Mo.App.1967). Plaintiffs should have objected to the certification of the transcript if they felt it incorrect. "[W]e may not notice or accept a statement of a fact asserted in a brief which is not supported by the transcript." *Hammack v. White*, 464 S.W.2d 520, 522[1–5] (Mo.App.1971). Hence, plaintiffs' argument must fail.

In that we reverse and remand the case for further proceedings, it is unnecessary to consider plaintiffs' second point of error.

The judgment is reversed and remanded.

CRANDALL and GRIMM, JJ., concur.