Janice K. RENO, Plaintiff–Appellant,

v.

Newt WAKEMAN, Jr., M.D.,
Defendant–Respondent.

No. 18044.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 17, 1993.

Motion for Rehearing or Transfer
Denied Jan. 11, 1994.

Application to Transfer Denied
Feb. 22, 1994.

Donald E. Woody, Kevin M. FitzGerald, Taylor, Stafford, Woody, Clithero & FitzGerald, Springfield, for plaintiff-appellant.

Andrew K. Bennett, Gannaway, Fiorella, Cummings & Bennett, Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for defendant-respondent.

SHRUM, Judge.

In this medical negligence case brought by Janice K. Reno against Newt Wakeman, Jr., M.D., the jury found for Defendant. On appeal Plaintiff raises multiple claims of prejudicial trial court error, including a charge that the trial court erred in disallowing cross-examination of one of Defendant's experts about his prior deposition testimony. Because of our conclusion that the trial court abused its discretion, we reverse and remand.

## FACTS

Plaintiff's claim as submitted to the jury was that Defendant was negligent because he did not remove a rock embedded in her right leg or did not inform her of the risk of infection associated with leaving the rock in her leg. Evidence relevant to Plaintiff's dispositive point on appeal follows.

On August 5, 1973, Plaintiff was struck on her right leg below the knee by something propelled from beneath an operating power lawn mower. She was unaware of what had struck her and did not know the object was embedded in her leg. It was later determined that the object was a rock and that it had lodged deep within her leg, approximately 3 to 3½ inches below her knee.

On the accident date Plaintiff was treated at a hospital emergency room without x-rays being taken. In April 1974, x-ray examination by her personal physician revealed a foreign object in her leg. This discovery

prompted her to see Defendant, an orthopedic surgeon.

By physical examination and history, Defendant determined that Plaintiff had a "chronic foreign body injury," meaning that a foreign object had been in her leg long enough for her body to adapt to it, in this case by encapsulating or walling off the foreign object thereby forming a barrier between healthy tissue and the object. From visual observation and without benefit of blood testing, Defendant concluded there was no infection in her leg.

Upon completion of his examination Defendant recommended against surgery, which he considered fraught with risk because of the location of the object in Plaintiff's leg. Although he advised Plaintiff of numerous potential surgical risks, he testified he did not recall explaining the risks of leaving the object in her leg. He acknowledged those risks included increased inflammation near the object, malignancy, breakdown of the capsule, and infection. Relying on Defendant's advice, Plaintiff chose not to have the object removed.

Increased pain in her right leg prompted Plaintiff to see Defendant in October 1980. She also was examined by Defendant on September 10 and October 2, 1987, because of swelling in her right leg. Defendant attributed the swelling to chondromalacia. During the September examination, he drew fluid from her knee. Because the fluid was clear, he concluded there was no infection. On all of these occasions, consistent with his earlier advice, Defendant recommended against removal of the object, primarily because of the absence of visual evidence of infection and the potential risks of surgery.[1]

Plaintiff sought a second opinion from Dr. Randall Norgard, an orthopedic surgeon. A videotaped deposition of Dr. Norgard was shown to the jury. Dr. Norgard examined Plaintiff on October 15, 1987, and admitted her that day to the hospital for a variety of tests. She was discharged on October 17 with a diagnosis of pes bursitis.[2] Dr. Norgard examined Plaintiff at his office on October 23 and 26; on each occasion she told him she had obtained no relief from the pain in her right leg.

On October 26 Dr. Norgard sent Plaintiff to a radiologist for a CT scan. The radiologist's report indicated the presence of a soft tissue mass and the possibility of an infection, some calcification, or a tumor. On October 27, at the out-patient surgery unit of a hospital, Dr. Norgard performed a biopsy of muscle tissue and the periosteum of the tibia at the site of the foreign object. He found "much chronic inflammatory response in the soft tissues" and muscle that "was not viable." His gross examination revealed no evidence of an infection and a stat gram stain test showed no bacteria present.

Following the biopsy, Dr. Norgard closed the surgical wound after inserting a "hemovac" drain and admitted Plaintiff to the hospital. While awaiting the results of the biopsy Dr. Norgard treated Plaintiff with pain medication but no antibiotics.

Dr. Norgard received the results of the biopsy on October 30. Although the biopsy revealed no evidence of a malignancy, it did show she had an abscess, that is, she had an infection in her leg in the area where he took the biopsy. On October 30, by which date the infection in Plaintiff's lower right leg was "quite obvious," Dr. Norgard opened the biopsy site, irrigated it, cut away necrotic tissue, and removed the foreign object, which

1.  Plaintiff testified she saw Defendant on July 31, 1987, because of swelling in her leg in the area where the object entered. Defendant testified the examination of that date dealt solely with Plaintiff's complaints about her toenails. Defendant performed out-patient toenail surgery on Plaintiff on August 4, 1987, and made follow-up examinations on August 13, 16, and 24. On those four dates in August, Plaintiff voiced no complaints related to her right leg. Plaintiff testified the September 10, 1987, examination was occasioned by swelling that had expanded to include her right knee. Defendant said the swelling on that date and on October 2, 1987, was confined to the knee joint itself and did not involve the area of her leg that contained the foreign body. Plaintiff made other visits, unrelated to her leg, to Defendant between April 1974 and October 1987. On those occasions, Plaintiff made no complaints about her leg.

2.  Pes bursitis was described by Dr. Norgard as an inflammation of three tendons that attach to the proximal medial aspect of the tibia.

he discovered to be a rock measuring 2.5 by 1.5 centimeters. Dr. Norgard then prescribed two antibiotics. The infection in Plaintiff's leg was resistant to one of the antibiotics, and the second antibiotic was not immediately effective. During November, Dr. Norgard performed three additional surgical procedures to irrigate the site and remove necrotic tissue. Plaintiff also underwent reconstructive surgery before her discharge from the hospital on November 24, 1987. She suffered substantial and disfiguring loss of leg muscle and other tissue.

Plaintiff's evidence included expert testimony of orthopedic surgeons Edwin Season, who testified at trial, and Joseph Lichtor, whose videotaped deposition was shown to the jury. Dr. Seasons testified there was a chronic, indolent, and slowly progressing infection in Plaintiff's leg in the area of the biopsy, a condition that existed prior to the biopsy. He stated that the infection resulted from the presence of a foreign body and that the necrosis discovered by Dr. Norgard resulted from the infection. Dr. Lichtor testified that an abscess and dead tissue existed in the area of the foreign object at the time Defendant examined Plaintiff in October 1987, a date prior to Dr. Norgard's biopsy.

One of Defendant's expert witnesses, orthopedic surgeon Edward Prostic, testified on cross-examination that on October 26, 1987, the day prior to the biopsy, Plaintiff had an active infection in her leg in the area of the rock, that the infection had been present "at least a week or two," and that the infection was a result of the presence of the rock.

Defendant's other expert witness was Dr. Alastair Haddow, a medical doctor and an infectious disease specialist. He testified that, because the contaminated rock had been totally encapsulated, Plaintiff had no active infection and no necrosis in her leg until after Dr. Norgard performed the biopsy. Dr. Haddow said the biopsy breached the capsule that had formed around the rock and permitted bacteria to escape into Plaintiff's leg causing the infection and loss of tissue.

During cross-examination, Plaintiff's counsel attempted to impeach Dr. Haddow with statements he had made in an earlier deposition. On four occasions, the attempted impeachment dealt with Dr. Haddow's assertions at trial, which we number for convenient reference and paraphrase for clarity: (1) a foreign object in a human body does not act as a nidus for an infection; (2) Plaintiff's symptoms, prior to the biopsy, were the result of bacteria multiplying within the capsule and not from a "breaking down" of the capsule; (3) prior to the biopsy, Plaintiff had "an active infection" in the area of the foreign object but it was contained within the capsule; and (4) continual pain alone does not provide a sufficient reason to surgically remove a foreign object.

Regarding each of these items of testimony, Plaintiff's counsel read testimony from Dr. Haddow's deposition that counsel considered inconsistent with the trial testimony. Regarding the first assertion, defense counsel made no objection to the use of the deposition testimony, and Dr. Haddow reconciled the apparent inconsistency. After Plaintiff's counsel read from the deposition transcript concerning the subject of the second assertion, defense counsel objected that the prior statement was not inconsistent. The trial court overruled the objection. Dr. Haddow then elaborated on his deposition testimony and its apparent inconsistency with his trial testimony, and he stated, "The biopsy report does not show that the capsule was broken down."

Concerning the third topic, defense counsel did not object to the reading of Dr. Haddow's deposition testimony that he believed Plaintiff had an actively developing infection before the biopsy. Dr. Haddow explained there was no inconsistency; the infection was actively developing, but it was totally encapsulated. Defense counsel objected to the fourth question on the grounds that Dr. Haddow was not an expert in surgery. The court overruled the objection, and Plaintiff's counsel read Dr. Haddow's inconsistent deposition testimony and moved on to another line of questioning.

A fifth attempt to impeach Dr. Haddow by use of his deposition testimony occurred as follows:

Q. [By Plaintiff's counsel to Dr. Haddow] The whole key to your opinion about Dr. Norgard and his treatment causing the damage involves a seventy-two hour period between October 27 of '87 and October 30 of 1987, is that correct?

A. Yes.

Q. And isn't it true, Doctor, that Dr. Norgard's activity or inactivity really ended up only aggravating the extent of the loss?

A. No, it's my opinion that Dr. Norgard's inactivity resulted in the extensive tissue and muscle damage that occurred to Ms. Reno's leg. . . .

Q. Doctor, let me show you again on page 119 [of the transcript of Dr. Haddow's deposition]:

"Question: 'Doctor, in your opinion would, even if there had been appropriate treatment, would Ms.—in the fashion that you've described, would Ms. Reno have experienced some tissue damage or loss as a result of the presence of the abscess, even if [Dr. Norgard] had done the appropriate treatment at that point?'

"Answer: 'Yes, I think it would have resulted in some tissue loss.'

"Question: 'But in your opinion the activity or inactivity by Dr. Norgard ended up aggravating the extent of the loss, is that correct?' "

And your answer was: "That's correct."

[Defense Counsel]: Objection, Your Honor. It's argumentative and it's improper use of impeachment.

THE COURT: The objection is sustained.

Plaintiff's counsel then continued his cross-examination on another subject. He made no offer of proof about what his question to Dr. Haddow would have been or how Dr. Haddow would have answered.

## DISCUSSION AND DECISION

■ Plaintiff's first point on appeal is dispositive. In it she claims the trial court erred in its refusal to permit her to cross-examine Dr. Haddow about his deposition testimony. She contends that Dr. Haddow's deposition testimony, as quoted above, was inconsistent with his trial testimony. Thus, she argues, the deposition testimony not only was admissible as substantive evidence, but also it provided a basis for impeachment of Dr. Haddow's credibility; therefore, its exclusion was an abuse of trial court discretion.

■ Resolution of Plaintiff's Point I involves the interplay of several principles of law. A prior inconsistent statement of a witness who is available for cross-examination may be used as substantive evidence in a civil trial. *Rowe v. Farmers Ins. Co.*, 699 S.W.2d 423, 428[2] (Mo. banc 1985); *Schroeder v. Lester E. Cox Medical Center*, 833 S.W.2d 411, 423 (Mo.App.1992). As a general rule, on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity, or credibility, or to shake his credit by injuring his character. *Greco v. Robinson*, 747 S.W.2d 730, 736[11] (Mo.App. 1988).

■ Measured against the above stated principles is the recognition that the trial court has broad discretion in determining the admissibility of substantive evidence, *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991), and in determining the extent and scope of cross-examination, *Crain v. Newt Wakeman, M.D., Inc.*, 800 S.W.2d 105, 107[3] (Mo.App.1990), including the impeachment of a witness by use of a prior inconsistent statement. *State ex rel. State Highway Comm'n v. Blue Ridge Baptist Temple*, 597 S.W.2d 236, 240[2] (Mo.App.1980). The court's rulings on such matters will not be disturbed on appeal absent a showing of an abuse of discretion. *Oldaker*, 817 S.W.2d at 250[3]; *Crain*, 800 S.W.2d at 107[3]; *Blue Ridge Baptist Temple*, 597 S.W.2d at 240[2].

Limitations exist on the trial court's discretion to control the extent and scope of cross-examination that seeks to elicit substantive evidence. The court does not have discretion "to exclude relevant and material facts merely because such facts are sought to be elicited on cross-examination." *Rogers v. St. Avit*, 60 S.W.2d 698, 700[3] (Mo.App. 1933). Evidence sought by cross-examination "should not be rejected as cumulative when it goes to the very root of the matter in controversy or relates to the main issue, the

decision of which turns on the weight of the evidence introduced by the respective parties." *Kummer v. Cruz,* 752 S.W.2d 801, 808[6] (Mo.App.1988).

■ Trial court discretion regarding impeachment of a witness is similarly limited. The court "has no discretion to prevent any cross-examination at all on a proper subject." *Merk v. St. Louis Public Service Co.,* 299 S.W.2d 446, 450[2] (Mo.1957). Where a witness's prior inconsistent statement relates specifically to a paramount issue in the case, the trial court may not prevent impeachment of the witness through use of that statement. *State ex rel. State Highway Comm'n. v. Davis,* 466 S.W.2d 172, 173[2] (Mo.App.1971).

The principles enunciated in *Kummer* and *Davis* comport with § 512.160.2, RSMo 1986, and Supreme Court Rule 84.13(b), each of which prohibits an appellate court from reversing a trial court judgment based on error that does not materially affect the merits of the action.

At trial, Dr. Haddow denied that Dr. Norgard's treatment aggravated the extent of Plaintiff's damage; rather, he opined that it was Dr. Norgard's "inactivity" that resulted in the damage to Plaintiff's leg. In contrast, his deposition testimony was that Dr. Norgard's treatment aggravated the extent of her loss. The deposition testimony thus was admissible as substantive evidence, *Rowe,* 699 S.W.2d at 428[2]; *Schroeder,* 833 S.W.2d at 423, and the court's rejection of it was error because the evidence went to "the very root" of a matter in controversy—causation—the decision of which turned on the weight of the evidence. *See Kummer,* 752 S.W.2d at 808[6].

The deposition testimony also was an appropriate subject for impeachment. It is true that Plaintiff's counsel used other portions of Dr. Haddow's deposition testimony in an attempt to impeach his testimony on other matters, but the court's ruling prevented any cross-examination at all on the pivotal question of whether Dr. Norgard's treatment alone caused Plaintiff's damage or whether it aggravated her damage. Plaintiff's cross-examination on this issue tended to test Dr. Haddow's accuracy and credibility on a specific and paramount issue in the case. Thus

it was error for the trial court to prevent impeachment of Dr. Haddow by use of his inconsistent deposition testimony. *See Merk,* 299 S.W.2d at 450[2]; *Greco,* 747 S.W.2d at 736[11]; *Davis,* 466 S.W.2d at 173[2].

Because Dr. Haddow's deposition testimony was substantive evidence that went to the very root of the matter in controversy, and because the court foreclosed impeachment with testimony that related specifically to a paramount issue in the case, we conclude the court abused its discretion and the judgment must be reversed.

Defendant does not dispute that a prior inconsistent statement by Dr. Haddow could be used as substantive evidence or that Plaintiff was entitled to use a prior inconsistent statement to impeach him. Defendant does, however, raise these three arguments in opposition to Plaintiff's point on appeal: Dr. Haddow's challenged deposition testimony was not inconsistent with his trial testimony; Plaintiff did not preserve the issue for review because at trial she did not make an offer of proof concerning the deposition testimony; and Plaintiff suffered no prejudice because Dr. Haddow's contradictory deposition testimony was read in the jury's presence.

We summarize Defendant's argument in support of his claim that the deposition testimony and trial testimony of Dr. Haddow were not inconsistent: Dr. Haddow's trial testimony was that Dr. Norgard's treatment during the period October 27–30, 1987, caused Plaintiff's loss, whereas the deposition testimony dealt with the period October 30 to November 3, 1987. Thus Dr. Norgard's activity or inactivity during the latter period aggravated the condition that was caused by his treatment during the former period.

A reading of the entirety of Dr. Haddow's deposition testimony defeats Defendant's argument. At an earlier point in his deposition, Dr. Haddow stated that the abscess was present in Plaintiff's leg as early as October 15, a date prior to Dr. Norgard's treatment. Thus, by his deposition testimony earlier quoted, Dr. Haddow ascribed some tissue loss to the abscess that existed prior to Dr. Norgard's treatment, a position inconsistent

with his trial testimony. Defendant's argument has no merit.

■ We now consider Defendant's argument regarding the absence of an offer of proof. As a general rule, appellate courts will not review alleged error in the exclusion of evidence unless the proponent of the evidence made a specific and definite offer of proof at trial. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883[14] (Mo. banc 1985). *See generally* Mo. Evidence Restated, § 103(a)(2) at 1–10 & 1–11 (MoBar 1984).

■ An offer of proof insures that the trial court and opposing counsel understand what evidence is being offered and its materiality and relevancy. *State ex rel. State Highway Comm'n. v. Northeast Building Co.*, 421 S.W.2d 297, 300[1] (Mo.1967). Moreover, an offer of proof enables appellate courts to understand the claims of error. *Frank,* 687 S.W.2d at 883. It follows then that a formal offer of proof is not necessary where the trial court and opposing counsel by other means are sufficiently advised as to what the testimony of the witness will probably be if allowed to testify, *Wahl v. Cunningham,* 320 Mo. 57, 6 S.W.2d 576, 587[9] (banc 1928); *Northeast Building Co.,* 421 S.W.2d at 300[1], and the appellate court can determine from the record whether the excluded testimony was proper evidence. *See Northeast Building Co.,* 421 S.W.2d at 301. It has been stated:

> It is often held that an offer of evidence is not necessary, in order to preserve for review an objection to a ruling of exclusion of evidence, where the purpose and purport of the testimony expected to be elicited are obvious, or fairly apparent, as when the question asked clearly indicates the pertinency, materiality, and nature of the answer expected, or the answer has been given and excluded, or the question indicates that the answer to it would be favorable to the party seeking to introduce the testimony.

*Kummer,* 752 S.W.2d at 807 (quoting 4 C.J.S., *Appeal and Error,* § 291 at 900 (1957)) (italics in *Kummer* deleted).

It was clear what deposition testimony Plaintiff wanted to place before the jury; it was read directly from the deposition transcript by Plaintiff's counsel. The "testimony expected to be elicited" was obvious: Dr. Haddow would admit, deny, or offer an explanation for his inconsistent deposition testimony. And Plaintiff's purpose was obvious: to provide substantive evidence on a matter in controversy or to test Dr. Haddow's accuracy and credibility on a paramount issue. Under the circumstances a formal offer of proof was unnecessary to preserve Plaintiff's claim of trial court error.

■ Finally, we consider Defendant's claim that Plaintiff was not prejudiced because Dr. Haddow's contradictory deposition testimony was read in the jury's presence, Plaintiff made no motion to strike Dr. Haddow's deposition testimony, and the jury was not instructed to disregard it. This argument ignores MAI 2.01, which instructs the jury that if the trial court sustains an objection "then that matter ... is excluded and must not be considered by you in your deliberations." In the absence of exceptional circumstances, appellate courts assume that a jury obeys a trial court's directions and follows its instructions. *Barlow v. Thornhill,* 537 S.W.2d 412, 422[12] (Mo. banc 1976); *Kohler v. McNeary,* 498 S.W.2d 796, 797[2] (Mo.1973).

We need not consider the other allegations of trial court error raised by Plaintiff because their recurrence is unlikely.

We reverse the judgment and remand the cause to the trial court.

PARRISH, C.J., concurs in result with separate opinion filed.

MONTGOMERY, J., concurs.

PARRISH, Chief Judge, concurring.

I concur in the result reached. I write separately, however, because of the emphasis the principal opinion places on the holding in *Rowe v. Farmers Ins. Co.,* 699 S.W.2d 423, 428 (Mo. banc 1985), that permitted substantive use of prior inconsistent statements in civil cases when a declarant is available for cross-examination.

The principal opinion concludes that the trial court erred in not allowing Dr. Had-

dow's testimony to be challenged by statements included in his earlier deposition testimony. The principal opinion states two reasons for reversing the trial court's judgment based upon the disallowance of that deposition testimony: (1) the deposition testimony was substantive pursuant to *Rowe* and its progeny of later Missouri cases and "went to the very root of the matter in controversy"; and (2) the deposition testimony was inconsistent with the trial testimony regarding a paramount issue in the case and, therefore, should have been admitted as a means of impeaching Dr. Haddow's trial testimony.

I agree that the trial court committed error by not allowing Dr. Haddow to be questioned regarding the prior inconsistent deposition testimony. I further agree that this error is reversible because, as I perceive the record on appeal, other than defendant, Dr. Haddow is the only expert who testified that the unwarranted injuries Mrs. Reno sustained by reason of medical treatment (or lack of treatment) were caused exclusively by the biopsy performed by Dr. Norgard. For that reason, I believe the credibility of Dr. Haddow is of such importance that the error materially affected the merits of the action. *See* Rule 84.13(b). I find its import similar to the impeachment testimony that required reversal in *State ex rel. Highway Comm'n v. Davis*, 466 S.W.2d 172 (Mo.App.1971).

I do not agree that any substantive value of the prior inconsistent statements Dr. Haddow gave in pretrial deposition was so material that it would warrant reversal. Other expert witnesses testified contrary to Dr. Haddow. Any substantive value of the deposition testimony does not, in my opinion, rise to the level of the inconsistent statements of witnesses in *Rowe v. Farmers Ins. Co., supra,* or in *Kummer v. Cruz*, 752 S.W.2d 801 (Mo.App.1988).

I concur in the result reached. I do not concur in the principal opinion's conclusion that any substantive affect of the disallowed deposition testimony would have materially affected the merits of plaintiff's action.